UNITED STATES of America, Appellee,

v.

Ernest R. STREETER, Appellant.

UNITED STATES of America, Appellee,

v.

Robert Jay COLLINS, Appellant.

Nos. 89–5217SD, 89–5247SD.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1989.

Decided June 29, 1990.

trict Court, departing upwards from the Sentencing Guidelines, imposed a sentence of eighty-four months' imprisonment and thirty-six months' supervised release. On appeal, Streeter argues that the District Court misapplied the Guidelines by basing its decision to depart on factors adequately considered in the Guidelines and by making several improper adjustments to his offense level. We vacate Streeter's sentence and remand to the District Court for resentencing. However, we affirm the Court's determination of defendant's total offense level.

Defendant Collins entered a conditional plea of guilty to one count of cultivating nineteen marijuana plants in violation of 21 U.S.C. § 841(a)(1) and received a sentence of thirteen months' confinement followed by three years of supervised release. On appeal, Collins argues that the trial court erred in failing to suppress the marijuana plants as evidence. He also challenges the use of the Drug Quantity Table to fix his base offense level on the basis of the number of plants in his possession, regardless of their actual weight. We affirm the District Court's ruling on defendant's motion to suppress. We vacate defendant's sentence, however, and remand to the District Court for resentencing. The portion of the Drug Quantity Table used to determine defendant's offense level is invalid, as applied to the circumstances of this case.

Robert L. Lewis, Rapid City, S.D., for appellant Streeter.

Glen H. Johnson, Rapid City, S.D., for appellant Collins.

Lonnie Bryan, Rapid City, S.D., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and LARSON,* Senior District Judge.

ARNOLD, Circuit Judge.

These are the consolidated appeals of two defendants who pleaded guilty to drug charges stemming from a common eleven-count indictment. Defendant Streeter pleaded guilty to one count of distributing one gram of methamphetamine (MDA) in violation of 21 U.S.C. § 841(a)(1). The Dis-

I.

In the Spring of 1988, the Pennington County (South Dakota) Sheriff's Department hired Maggie Andrews to work as an informant in its ongoing investigation of drug activity around Rapid City. At the Department's direction, Ms. Andrews moved to Rapid City and shortly thereafter met Ernest Streeter. She began to make small purchases of drugs from him, and they eventually became sexually involved. At some point in their relationship, Streeter told Ms. Andrews that he and a friend were setting up a methamphetamine lab, and that if she could get them some chemicals,

* The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

she could share in the proceeds. She indicated that she was not interested, but she had a relative who would be. She arranged a meeting.

On July 20, 1988, Special Agent Duane Dahl of the South Dakota Division of Criminal Investigation, posing as Ms. Andrews's relative, met with Streeter. In a conversation that was recorded, Streeter told Dahl about a "chemist" who had recently moved to the area from Barstow, California. This chemist was equipped to start making methamphetamine and would do so if he could obtain some 200–proof alcohol. Dahl told Streeter that he would get the alcohol. Dahl added that he could obtain other chemicals necessary to produce methamphetamine if Streeter would either get his chemist to write down what he needed, or arrange a meeting between the chemist and Dahl. On August 2, 1988, Dahl delivered a gallon bottle of 190–proof grain alcohol to Streeter. At that meeting, Streeter indicated that he would deliver the alcohol to "Bob" the chemist, who lived in Custer, sometime later that day. In that conversation, Streeter also mentioned that Bob had about twenty marijuana plants growing in his house. A few hours later, law-enforcement officials observed Streeter park his car at a house two miles south of Custer on Highway 385.

Streeter met with Dahl again on the following day and told him that the chemist would be making a sample batch of methamphetamine soon. At that meeting Streeter gave Dahl back a now partially filled bottle of alcohol and a list of chemicals on the back of a paper plate. Streeter claimed Bob had made the list and needed the chemicals for future cooks. (The chemicals listed on the plate were a partial lot of ingredients needed to produce MDA.) That same day, Dahl determined through the Division of Motor Vehicles that Robert Collins, formerly of Barstow, California, had listed as his address a house on Highway 385 outside Custer. A record search conducted later that day determined that Collins had a prior felony and a prior misdemeanor conviction for possession of controlled substances.

On August 5, 1988, police officers and D.E.A. agents arrested Streeter and his girlfriend, Ms. Rector, pursuant to a warrant. In addition, police officers searched Ms. Rector's trailer home, where Streeter lived, and another trailer home in the Black Hills forest area.

That same day, a search warrant was served upon the Collins residence, and an arrest warrant was served upon Collins by four D.E.A. agents dressed in black fireproof "ninja" outfits. One agent testified that they jumped out of a special van parked approximately twenty yards from Collins's front door. As they ran towards the door, the agent shouted, "Police, Search Warrant, Open the Door," repeatedly. When the agents reached the door, they identified themselves several times. The agent who testified heard shuffling behind the door, stepped aside, and shouted for the occupants to open the door. Hearing no further noise and fearing for his safety, he tried the door handle and then kicked in the door. Approximately twenty to thirty seconds passed after the agents left the van before they forced open the door. Once inside the house, the record is unclear whether the D.E.A. found evidence of methamphetamine production. They did, however, find nineteen cultivated marijuana plants in the attic. All together, these plants weighed 812.1 grams, and after processing (drying) yielded a total weight of 211.35 grams. The agents also found a semi-automatic rifle with a case and ammunition, a .25 caliber automatic pistol with a loaded magazine, but apparently no round chambered, and a .22 caliber rifle hanging on the living-room wall. The agents then arrested Collins.

On August 8, both defendants and Ms. Rector were charged in an eleven–count indictment. Streeter was charged with conspiracy to manufacture MDA and attempt to manufacture MDA, both in violation of 21 U.S.C. § 841 and § 846; distribution and possession with intent to distribute three and one-half grams of cocaine in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute and distribution of three and one-half grams of methamphetamine which was thirteen per cent. pure, in

violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute and distribution of one gram of methamphetamine which was twelve per cent. pure, in violation of 21 U.S.C. § 841(a)(1); and possession with intent to distribute methamphetamine and conspiracy to distribute methamphetamine and cocaine, in violation of 21 U.S.C. § 841 and § 846. Streeter originally entered a plea of not guilty to all counts, but later withdrew this plea and pleaded guilty to the count of selling one gram of methamphetamine. Although the Guidelines would impose a sentence of eighteen to twenty-four months on a defendant with Streeter's offense characteristics, the Court imposed a sentence of eighty-four months' imprisonment and thirty-six months' supervised release, a term more than three times as long as the upper end of the Guideline range.

Collins was charged with conspiracy to manufacture MDA and attempt to manufacture MDA, in violation of 21 U.S.C. §§ 841 and 846; use of a firearm in connection with a drug-trafficking offense, in violation of 18 U.S.C. § 924; and cultivation of marijuana, in violation of 21 U.S.C. § 841. He also originally entered a plea of not guilty, but later withdrew it, entering a conditional guilty plea to the count charging him with cultivation of marijuana. The other counts were dismissed. The Court, applying the Guidelines, sentenced Collins to thirteen months' confinement, to be followed by three years of supervised release.

## II.

### A.

We first turn to the issues raised by Streeter. He appeals his sentence on the ground that the District Court misapplied the Guidelines. Streeter's presentence report recommended a sentence of 135 to 168 months. That recommendation was based on a total offense level of thirty-two, and a criminal-history category of II. The government was not, however, able to prove the specific instances or specific amounts of drug transactions alleged in the memo which the probation officer had used to calculate his recommendation. Consequently, the Court found Streeter to have a base offense level of only twelve. The Court then found Streeter to be a leader in the distribution of drugs under Guidelines § 3B1.1, and accordingly adjusted his base level up two levels. The Court also refused to grant Streeter a two-level reduction for acceptance of responsibility under Guidelines § 3E1.1. Thus, defendant had a total offense level of fourteen, the normal range for which (with a criminal-history category of II) is eighteen to twenty-four months. The Court, however, departed from the Guidelines and imposed a term of eighty-four months' incarceration.

■ Streeter challenges the Court's decision to depart from the Guidelines. He argues that the factors the Court relied upon in making its decision to depart were adequately considered in the Guidelines, and therefore the Court had no discretion to depart under 18 U.S.C. § 3553. Streeter also claims that the reasons given by the Court for its departure in his sentencing are unclear, in violation of 18 U.S.C. § 3553(c), which requires that a court imposing a sentence outside the Guidelines give its reasons. Streeter claims that the Court merely noted that a sentence corresponding to the basic offense level would not reflect defendant's conduct in this case; it never explained what the aggravating circumstances were. Streeter, however, believes that the context of the sentencing hearing—the lengthy dialogue between the Court and defendant preceding the decision to depart—indicates that the reason for departure must be one (or a combination) of several factors: the defendant's alleged periodic distribution of controlled substances, his failure to cooperate with law-enforcement officers, or his status as a leader in the illegal activity charged. Streeter argues that since the Court failed to show how these circumstances are of "a kind, or to a degree not adequately taken into consideration by the Guidelines," departure here was improper under 18 U.S.C. § 3553.

The government asserts that the Court made it clear that it was departing because of Streeter's long involvement with drug trafficking, citing the Court's comments af-

ter the presentation of the government's witnesses:

The court believes that the testimony of the government falls short of establishing the conducts [in question].... The Court, accordingly, will not use these specific items to the extent that they are specific in the determination of the offense level.

The court, however, will use that information with respect to the sentence and to the departure, which the Court intends to make in this case.

T. 101–102. The government insists that other drug activity is proper grounds for departure, despite the fact that the Guidelines already take this factor into account. In this case, it says, the Guideline sentence failed to reflect defendant's conduct and therefore the Court could depart. We disagree with this line of reasoning.

Under the Sentencing Guidelines, a district court must impose a sentence of the kind, and within the range, established by the Sentencing Commission for the applicable offense and defendant category unless it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b). In determining whether the circumstance was adequately considered by the Commission, the court "shall consider only the sentencing guidelines, policy statements and official commentary of the Sentencing Commission." *Ibid.* Furthermore, when departing from the applicable sentencing range, a court must state the "specific reason" for its departure, and the sentence given must be reasonable in light of the articulated reasons. 18 U.S.C. §§ 3553(c)(2), 3742(e)(3)(A). See *United States v. Lang*, 898 F.2d 1378 (8th Cir. 1990).

From our review of the record of Streeter's sentencing hearing, we see neither a finding of circumstances of a kind or degree not adequately considered in the Guidelines, nor an explicit statement of the Court's reason for departure. While the government points to an intimation by the Court as to its reason for departure, this is an inadequate explanation under the statute. Furthermore, we do not believe that the government's failure to prove adequately specific instances of Streeter's dealing in drugs to augment his base offense level, could ever be transformed into the equivalent of a failure of the Commission to consider adequately a defendant's past criminal conduct in formulating the Guidelines. See *United States v. McDowell*, 902 F.2d 451 (6th Cir.1990). The government either proved past conduct, or it did not. Here, the District Court found that it did not. A generalized feeling that Streeter had nevertheless been involved somehow with drugs in the past is not a sufficient basis for sentencing him outside the Guidelines.

Accordingly, we vacate Streeter's sentence and remand to the District Court for resentencing. The sentence must be within the Guidelines unless the District Court (1) finds specific facts (2) which were not adequately taken into account in the formulation of the Guidelines. If such findings are made, any departure must still be "reasonable." See 18 U.S.C. § 3742(e)(3).

B.

Streeter also challenges the Court's computation of his offense level. As to these points, we agree with the District Court's actions.

### 1. Downward Adjustment for Governmental Misconduct

■ He first argues that the District Court erred in refusing to consider substantial evidence of government misconduct, either as a mitigating factor warranting a downward departure, or as an offset to any aggravating factor the Court found. The defendant argues that Ms. Andrews's actions (such as using sex to induce him to sell her drugs and badgering others to sell drugs after they had initially refused to do so), and the police's failure to acknowledge her personal use of drugs, constituted outrageous conduct on the part of the government. While extreme instances of outrageous conduct by the government may

bar it from invoking the judicial process to obtain a conviction, we do not have such conduct before us. See *United States v. York*, 830 F.2d 885, 889 (8th Cir.1987), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988) (use of an informant who became involved in robbery in spite of instructions otherwise does not prohibit prosecution). Furthermore, Streeter pleaded guilty and does not challenge that plea. Therefore, the government's conduct, as it might relate to a violation of due process or a defense of entrapment, is no longer material to his guilt. We see no warrant for the argument that governmental or prosecutorial misconduct should mitigate the sentence of an admittedly guilty defendant.

### 2. Defendant's Role in the Offense

Next, Streeter argues that the Court erred in finding that he was a leader in the activities for which he was convicted and accordingly increasing his base offense level under Guidelines § 3B1.1. This is a factual determination reviewed under a clearly erroneous standard. See *United States v. Williams*, 894 F.2d 208, 213–14 (6th Cir.1990). We find no error here. The government presented several witnesses at the sentencing hearing who provided more than adequate testimony from which the Court could derive its finding. T. 13–82.

### 3. Acceptance of Responsibility

Finally, Streeter argues that the Court erred in refusing to reduce his base offense level by two levels for his acceptance of responsibility under Guidelines § 3E1.1. As we have stressed before, the sentencing judge is in a unique position to assess the appropriateness of granting this adjustment, and is entitled to great deference in reaching this determination. Sentencing Guidelines § 3E1.1, Commentary. See *United States v. White*, 888 F.2d 1252, 1254 (8th Cir.1989). Furthermore, a guilty plea does not automatically entitle a defendant to this reduction. *Ibid.* See also *United States v. Smitherman*, 889 F.2d 189, 192 (8th Cir.1989). At the hearing, Streeter testified that he did not plan to cooperate with law-enforcement officials. This lack of cooperation, the District Court

reasoned, reflected that the defendant had not accepted responsibility for his criminal acts. The then-effective Commentary to Guidelines § 5K1.2 establishes that a defendant's lack of assistance may be used in evaluating that defendant's sincerity in claiming acceptance of responsibility. We see no error in the Court's finding and affirm the decision to deny the defendant this reduction.

Accordingly, we affirm the District Court's computation of Streeter's offense level, and remand for the Court to reimpose sentence in accord with this opinion.

### III.

We now turn to Collins's appeal.

### A.

Collins appeals the Court's denial of his motion to suppress the introduction into evidence of the marijuana plants found in his home.

### 1. Inadequate Affidavit

He first argues that the search warrant was improperly issued. He contends that the affidavit supplied by the police at the probable-cause hearing contained unreliable and untrue statements—statements allegedly made by Streeter and relayed to the police by Ms. Andrews. He argues that the affiant had a duty to verify these statements or at least attest to the previous reliability of the hearsay declarant—Streeter—under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We disagree.

Under the Fourth Amendment the issuer of a warrant must simply make a practical decision whether, given all the circumstances of the affidavit, there is a fair probability that evidence of wrongdoing will be found. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. It is apparent to us that, considering all the circumstances presented in the affidavit, there was sufficient probability of finding evidence of wrongdoing to support the issuance of the warrants served upon Collins. There were several statements

made by Streeter to a reliable informant and to an undercover agent linking Collins to the suspected crime. For instance, Streeter told Dahl about the methamphetamine cook named Bob who had twenty marijuana plants growing in his house and had just moved from Barstow, California. These statements were sufficiently reliable for a probable-cause finding, given that they were made against Streeter's own penal interest. These statements were also corroborated by police observations. Officers saw Streeter drive out of town to Collins's house around the time he told Dahl he would deliver the alcohol to his cook. In addition, a records check indicated that Collins's name was Bob, and that he had recently moved to South Dakota from Barstow, California.

### 2. *Franks* Hearing

■ Defendant next argues that the Court erred in refusing to grant him an evidentiary hearing on allegedly false statements contained in the affidavit for the warrants. In his motion to suppress, defendant moved for an evidentiary hearing, as required under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and submitted an offer of proof. The Court found no merit in defendant's position, and neither do we.

■ To receive a *Franks* hearing a defendant must make a substantial preliminary showing of an intentional or reckless falsehood in the affidavit. Allegations of negligence or innocent mistake are not sufficient. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. In addition, the contested material must be vital to the determination of probable cause. If, after disregarding the contested statements, there is still sufficient material in the affidavit to support a finding of probable cause, no evidentiary hearing is required. *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir.), *cert. denied*, 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

■ The defendant has identified the portions of the affidavit he contends are false, and has sworn to their falsity. He has not, however, offered proof of the affi-

ant's recklessness or deliberate falsehood in including this material in the affidavit. This additional proof is necessary to raise the allegations above a mere claim of negligence. Therefore, Collins has failed to make an adequate showing of intentional or reckless falsehood in the affidavit. Furthermore, even if defendant had made such a showing, there was still ample uncontested material in the affidavit to support a finding of probable cause. See *United States v. Wallraff*, 705 F.2d 980, 992–93 (8th Cir.1983).

### 3. Violation of 18 U.S.C. § 3109—"Knock and Announce Rule"

■ Finally, Collins argues that the evidence obtained in the search of his house should be suppressed because the D.E.A. agents violated the "knock and announce" rule set out in 18 U.S.C. § 3109. That section of the Code provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

*Id.* Defendant claims that there was no notice as required in the statute because neither he nor his wife ever heard the agents until they were inside the house. He points to the agents' testimony that they knocked on the door for approximately five to ten seconds before kicking it in, and argues that waiting such a short time before forcing an entry is a per se violation of the statute. We disagree with both of the defendant's assertions.

The District Court found that the agents adequately notified the residents of their authority and purpose, and this finding is supported by the record. As for defendant's second assertion, this Court has not addressed how long police officers must wait before breaking into a house to execute a warrant. The Court of Appeals for the Tenth Circuit, however, has resolved this point in *United States v. Ruminer*,

786 F.2d 381 (10th Cir.1986). In that case, the Court found no violation when officers waited five to ten seconds before forcing an entry, noting:

> Courts have upheld the validity of searches where the delay was one minute, thirty seconds, fifteen to twenty seconds, ten seconds, and forcible entry immediately after the announcement has been upheld where there was a likelihood of an attempt to escape, to resist, or to destroy evidence.

*Id.* at 384 (citations omitted). There cannot be a hard and fast time limit under 18 U.S.C. § 3109, given the myriad of potential circumstances that could confront an officer serving a warrant. The trial court must determine whether under the circumstances the agents were justified in forcing their entry after announcing their purpose. In Collins's case, the officers testified that several seconds after knocking on the door they heard movement behind the door. Fearing for his and his fellow agents' safety (because of the highly flammable and toxic chemicals involved in methamphetamine production), one of the agents then physically kicked in the door. T. 55–57. The trial court found the agents' testimony credible. The Court's conclusions as to the propriety of the agents' actions under 18 U.S.C. § 3109 are supported by the record, and we affirm its refusal to suppress the evidence. Collins's conviction, therefore, will stand.

### B.

We now look at Collins's appeal from sentence. He challenges the Court's application of the Sentencing Guidelines. In the pre-sentence report, the probation officer determined that Collins possessed 1900 grams of marijuana by multiplying the number of plants in his possession by 100 grams. He then noted that the government claimed it had found equipment in Collins's house indicating he could produce one-eighth of an ounce of MDA. Using Drug Equivalency Tables contained in the

Guidelines, he converted this amount to 175 grams of marijuana and added this amount to the 1900 grams. For this quantity of marijuana by weight, the Drug Quantity Table (Table) in Guidelines § 2D1.1 provides for a base offense level of ten. The District Court made findings in accordance with the presentence report, except rather than convert the plants to grams of marijuana, it simply referred to the number-of-plants provisions of the Table. Those provisions give a base level of ten for defendants with nineteen plants.[1] The Court then increased the base level by two for defendant's possession of firearms during the commission of the offense, Guidelines § 2D1.1(b)(1), and by two levels for defendant's role as a leader, Guidelines § 3B1.1. The Court also gave defendant a two-level reduction for acceptance of responsibility, Guidelines § 3E1.1(a), making a total offense level of twelve. Collins's criminal-history category is I. The Sentencing Table yields a range of ten to sixteen months in this situation. The District Court sentenced him to thirteen months, the midpoint of the range.

#### 1. Calculation of Drug Quantity

■ In sentencing Collins for the possession of nineteen marijuana plants, the District Court used the Drug Quantity Table appearing at pages 2.38–.39 of the Sentencing Guidelines as they existed at the time sentence was imposed. The District Court assigned a base offense level of ten. The relevant portions of the Table make the following assignments of offense levels:

| Controlled Substances and Quantities | Base Offense Level |
| --- | --- |
| 1–2.4 KG Marijuana, 10–24 Marijuana Plants | Level 10 |
| 250–999 G Marijuana, 3–9 Marijuana Plants | Level 8 |
| Less than the following: 250 G Marijuana, 3 Marijuana Plants | Level 6 |

Drug Quantity Table, incorporated in Guidelines § 2D1.1(a)(3), at page 2.39. The Table presupposes an equivalency of 100 grams per plant in almost every instance. Thus, in Collins's case, nineteen plants

---

1. The addition of 175 grams of marijuana for the one-eighth ounce of MDA did not change the defendant's base level under the Court's use of the Drug Quantity Table. If, however (as we

are holding), the use of the Table was error, the grouping of the MDA with the marijuana becomes material. This issue is discussed *infra* in Part II.B.2. of this opinion.

translated into 1.9 kilograms, or 1900 grams, of marijuana. To these 1900 grams were then added 175 grams, representing the equivalent of the MDA with which the government charged Collins for sentencing purposes.

Collins argues that this method of sentencing is inconsistent with the statute, 21 U.S.C. § 841(b)(1)(D), which fixes the punishment for his offense. The statute reads in pertinent part as follows:

> In the case of less than 50 kilograms of marihuana, *except in the case of 50 or more marihuana plants regardless of weight,* such person shall ... be sentenced to a term of imprisonment of not more than five years....

Collins argues that this language indicates the desire of Congress that the actual weight of marijuana be the determining factor in sentencing, except when fifty or more plants are involved. We find this argument persuasive. The statute clearly indicates that in cases involving less than fifty plants, defendants are to be sentenced on the basis of the weight of the marijuana involved. The policy of the statute therefore conflicts with the rationale behind the Guidelines, and the statute must prevail. The Sentencing Reform Act, which created the Guidelines system, of course, can repeal previously existing statutes by implication, but this is not what has happened here. Congress has dealt with 21 U.S.C. § 841(b)(1)(D) much more recently than the enactment of the Sentencing Reform Act. The provision quoted above, making fifty plants the break point, so to speak, above which weight becomes immaterial, assumed its present form as a consequence of the passage of § 6479 of the Anti-Drug Abuse Act of 1988, 102 Stat. 4318, Pub.L. No. 100-690.

 In short, the Commission's decision to equate one plant with one hundred grams when fewer than fifty plants are involved is inconsistent with Congress's decision that weight alone is determinative, rather than number of plants, when fewer than fifty plants are involved. If there were some reason to believe that the average weight of marijuana plants grown in quantities of less than fifty is one hundred grams, the Commission's choice could perhaps be defended. The Commission is an agency created by Congress with power to make rules to carry out its purpose. See 28 U.S.C. §§ 991 *et seq.* We review its rules with deference, and we may not substitute our judgment on policy matters for that of the Commission. But a Guideline that is arbitrary and capricious cannot be given effect in court. We have been offered and we can find no rational basis to support the one hundred grams-to-plant ratio. We raised this question at the oral argument and inquired of the United States whether it could find out how the Sentencing Commission arrived at the one–marijuana–plant–to–one hundred–gram equivalency. By letter received on November 24, 1989, the United States advised us that the "one plant—one hundred gram equivalency was arbitrarily arrived at." The Narcotics and Dangerous Drug Section of the Criminal Division of the Department of Justice had asked the Commission to adopt an equivalency of one plant to 1000 grams, regardless of the number of plants. This approach would at least have borne some relation to the philosophy of the statute, which uses a ratio of one plant to one kilogram throughout, with the exception of the provision quoted above regarding possession of fifty kilograms or less. The Commission, however, chose not to adopt the 1000–gram ratio, and we have no power to make such an essentially legislative choice.[2]

In brief, we hold that the Drug Quantity Table, as it existed at the time Collins was

---

**2.** The version of the Guidelines presently in effect, representing amendments issued after the sentence was imposed in this case, now treats each marijuana plant as equivalent to 1000 grams if 50 or more marijuana plants are involved, but continues to treat each plant as equivalent to 100 grams if fewer than 50 plants are involved, provided, however, that if the actual weight of the marijuana is greater, that number should be used. This scheme follows the statute so far as cases involving 50 or more plants are concerned. As to cases involving fewer than 50 plants, however, it appears to perpetuate the infirmity that we have found in the Guidelines used to sentence Collins. The present version of the Guidelines is not before us, however, and we need not pursue the analysis with respect to it.

sentenced, is invalid to the extent that it automatically equates one marijuana plant with one hundred grams in cases involving fewer than fifty plants. This is not inconsistent with our holding in *United States v. Buckner*, 894 F.2d 975 (8th Cir.1990), sustaining as against a substantive-due-process challenge the provision of the Guidelines which equates one gram of cocaine base or "crack" to one hundred grams of cocaine. This one hundred-to-one ratio comes directly out of the statute, and essentially represents a moral judgment on the part of Congress that cocaine base, because of its greater addictive qualities, is much more dangerous than simple cocaine. Congress believes that crack is one hundred times more dangerous than cocaine. This is not really a quantitative judgment. By contrast, there is simply no evidence to support an irrebuttable presumption that every plant of marijuana appearing in a group of fewer than fifty weighs one hundred grams.

 Beginning with a base offense level of ten on account of the nineteen plants was therefore error. On remand, actual weight, rather than number of plants, should be used for sentencing purposes. When seized, the plants weighed 812.1 grams. After processing, that is, drying and removal of stems, 211.35 grams remained. It seems that the latter, smaller figure should be used. See 21 U.S.C. § 802(16), defining marijuana as not including mature stalks, fiber produced from such stalks, or any other compound or derivative of such mature stalks. If this approach is correct, the base offense level should have been six, rather than ten. However, we leave to the District Court in the first instance the decision of what base offense level to assign. The question of whether to use the weight of the plants when seized, as opposed to their weight after being processed, has not been fully briefed in this Court, and we express no definite view on it.

### 2. Grouping of MDA with Offense of Conviction

Defendant argues that the Court further misapplied the Guidelines by grouping the one-eighth ounce of MDA that defendant allegedly could produce, with the marijuana.[3] He makes two arguments.

 First, Collins says the MDA could not be used against him for sentencing purposes because the charge involving the MDA was dismissed. The Guidelines, however, clearly anticipate including quantities of drugs from uncharged or dismissed counts in the calculation of a defendant's base offense level for drug offenses. See *United States v. Gooden*, 892 F.2d 725, 727–28 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990) (no due-process violation when court adds quantities from uncharged drug transactions where proved by preponderance of the evidence). The Commentary to Guidelines § 1B1.3(a)(2) explains that:

> quantities and types of drugs *not specified in the count of conviction* are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction. [Emphasis added.]

*Id.,* Commentary at 1.19. The Commentary makes no distinction between uncharged and dismissed counts, and we find no logical reason to do so. See *United States v. Natal–Rivera*, 879 F.2d 391, 393 (8th Cir. 1989).

 Defendant argues alternatively that the grouping in his case was error because there was no evidence offered to prove that this quantity of MDA could be produced and no finding by the Court that this MDA was part of the same course of conduct as the count of conviction. Again, we disagree. The Court did find generally that the facts were as stated in the presentence report, and the report attributed to Collins an eighth of an ounce of MDA. The presentence report is not evidence and

**3.** Because we are holding that the marijuana alone does not produce a base offense level of 10, treatment of the MDA becomes legally significant. The 175 grams to which the MDA is equivalent could push the base offense level from 6 to 8 if the relevant weight of marijuana is the weight after processing.

is not a legally sufficient basis for making findings on contested issues of material fact. If a defendant objects to factual allegations in a presentence report, the Court must either state that the challenged facts will not be taken into account at sentencing, or it must make a finding on the disputed issue. See Fed.R.Crim.P. 32(c)(3)(D). If the latter course is chosen, the government must introduce evidence sufficient to convince the Court by a preponderance of the evidence that the fact in question exists. At the evidentiary hearing, the rules of evidence as such do not apply, but the Confrontation Clause of the Sixth Amendment does. Here, as Collins says, no evidence was introduced. But Collins did not make a sufficiently specific objection to the portion of the presentence report in question to preserve this issue for appellate review. In the absence of objection alerting the Court to the need for a specific finding, the Court may rely on the presentence report. We affirm the District Court's ruling on Collins's involvement with MDA.

### 3. Upward Adjustment for Defendant's Role as Organizer

▇▇▇▇▇ Next, Collins argues that the Court's upward adjustment of his offense level for his role as an organizer in the offense was error because he was the only participant in the offense. See Guidelines § 3B1.1. He claims that he was the sole party involved in cultivating marijuana in his attic, and that the government did not offer evidence to the contrary. He claims it is logically inconsistent, and contrary to the Guidelines, to enhance his sentence for being his own leader. We agree that this enhancement does not apply where the defendant is the sole participant in the offense.[4] But the Court's finding that defendant acted with others, and was an organizer in the offense, is not clearly erroneous and therefore stands. In Collins's hearing the Court also specifically found that the defendant had exclusive control of the

plants, decided to grow the plants and therefore was clearly the leader of the scheme to cultivate the plants. We see no error in this finding. Although the Court did not announce that the other defendants participated in the cultivation of the marijuana, it did find that the defendant's crime was not a single-person crime. T. 101. The Court had two other defendants before it at Collins's sentencing, defendants who had pleaded guilty to charges from the common indictment. · Also, there is evidence that Streeter knew of the plants in Collins's home. We find no clear error in these findings, and thus the Court's application of Guidelines § 3B1.1 is affirmed.

### 4. Possession of Firearms

▇▇▇ Finally, the defendant argues the trial court's two-level enhancement of his base offense for possessing firearms during the commission of a drug offense pursuant to Guidelines § 2D1.1 was error. Collins notes that the D.E.A. agents found weapons on the ground floor of his home, but his marijuana was found in the attic. Moreover, because the guns were unloaded and either hidden or encased, Collins claims that it is clearly improbable that the weapons were connected to the offense. Guidelines § 2D1.1, Commentary, Paragraph 3. Collins's guns may not have been loaded, but one, a .25 caliber pistol, had a loaded magazine and is not used for hunting. In addition, one of the other guns—a Colt AR–15—is a semi-automatic assault rifle that is not typically used in hunting, and is quite a formidable weapon. See *United States v. Green*, 889 F.2d 187 (8th Cir. 1989). We hold that the connection of defendant's guns to the offense was not "clearly improbable" and affirm the trial court's application of Guidelines § 2D1.1.

Accordingly, we affirm the Court's denial of the motion to suppress. We uphold Collins's conviction. The sentence is vacated,

---

**4.** The government argues that even if there was no one else involved in the cultivation of marijuana, there is ample evidence of his role as a leader in an MDA distribution scheme with Streeter. We disagree. Section 3B1.1 is an enhancement for defendant's role in the offense of conviction, not his role in collateral conduct.

and the cause remanded for resentencing in accordance with this opinion.