**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Terry THOMPSON, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Grady Ray HOWARD, Anthony Angelet, Defendants–Appellants.**

Nos. 91–8703, 91–8705.

United States Court of Appeals, Eleventh Circuit.

Nov. 4, 1992.

William Allman Morrison, Jones Morrison & Womack, Bruce S. Harvey, Atlanta, Ga., for defendants-appellants in No. 91–8705.

Before COX, Circuit Judge, CLARK and WELLFORD,[*] Senior Circuit Judges.

PER CURIAM:

, Anthony Angelet, Grady Ray Howard, and Terry Thompson were charged in a one-count indictment with conspiracy to possess with the intent to distribute, to manufacture, and to distribute methamphetamine and marihuana between January 1989, and November 30, 1989, in violation of 21 U.S.C. § 846. Thompson pleaded guilty to limited involvement in the conspiracy, the manufacture of forty marihuana plants. After a full trial, a jury found Angelet and Howard guilty.

Thompson received a sentence of twenty-seven months incarceration and three years supervised release. Angelet received a sentence of 168 months incarceration and five years supervised release. Howard received a sentence of 210 months incarceration and five years supervised release. All three defendants appeal.

## BACKGROUND

In October 1989, police arrested Janice Hancock in Henry County, Georgia, while she was attempting to deliver methamphetamine to James Hanson. After her arrest, Hancock agreed to cooperate with law enforcement authorities and told them that she had obtained the methamphetamine from her boyfriend, Grady Ray Howard. While in custody, Hancock telephoned Howard and told him that Hanson wanted more methamphetamine. Hancock and Howard met to discuss Hanson's purchase and to set up the time when Howard would deliver the drug to Hanson's residence. When Howard delivered the methamphet-

Steven Paul Berne, Long & Mullman, Rise Jean Weathersby, Federal Defender Program, Inc., Atlanta, Ga., for defendant-appellant in No. 91–8703.

Carolyn Jackson Adams, Asst. U.S. Atty., Atlanta, Ga., for U.S.

---

[*] Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

amine to Hanson's home, authorities arrested him.

During the course of her cooperation, Hancock informed law enforcement authorities that Howard had told her that he and Terry Thompson were growing marihuana on land that Howard owned in Butts County, Georgia. A search of the land in Butts County, where Terry Thompson lived, revealed forty marihuana plants. Information from Hancock and other sources led authorities to property in Henry County where Howard was building a house. A search of this property resulted in the seizure of 120 marihuana plants and the discovery of an underground bunker. Authorities recovered from the bunker hydroponic lights used to grow plants, plastic-lined vats, handwritten chemical books, how-to-grow marihuana books, and a small amount of marihuana in plastic bags. Information from a confidential informant led authorities to believe that money and drugs were buried beneath the Henry County property. In one of the over forty-five holes in the ground, authorities found a bucket containing 178 bags of marihuana tagged with dates and brands.

Hancock testified that during her relationship with Howard, she accompanied him many times to meet Anthony Angelet. At several of these meetings Angelet gave Howard large sums of cash, over $27,000 on at least two occasions. Hancock testified that Howard told her that Angelet was selling methamphetamine for him. On one occasion, Hancock saw what Howard told her was twenty-seven pounds of methamphetamine in the trunk of Howard's car. Howard informed Hancock that Angelet was to receive some of it.

**1.** Angelet also raises the following issues: (1) whether the district court erred in denying Angelet's motion for severance; (2) whether the harm caused by the Government's cross-examination of Janice Hancock beyond the scope permitted by Federal Rule of Evidence 611(b) was cured by the district court's instruction to the jury to disregard that testimony; and (3) whether the district court constructively amended the indictment by instructing the jury that it must find that Angelet conspired with one of the "others" mentioned in the indictment without

Each defendant appeals. We have considered each of the arguments Howard raises on appeal and have determined that none merits discussion. Accordingly, we affirm Howard's conviction and sentence. We discuss separately the claims raised by Angelet and Thompson.

## DISCUSSION

### *Angelet*

Three of the issues Angelet presents merit discussion: (1) whether Janice Hancock's testimony included coconspirator statements inadmissible under Federal Rule of Evidence 801(d)(2)(E); (2) whether the evidence was sufficient to establish that Angelet had knowledge of, and participated in, the charged conspiracy; and (3) whether the district court erred in excluding Hancock's Charter Peachford hospital records and limiting their use on cross-examination.[1]

### A. Coconspirator Statements

■ Angelet argues that the only testimony against him came from Hancock in the form of inadmissible hearsay. Angelet challenges two different statements that Hancock made during direct examination by the Government. We will discuss each statement separately.

#### 1.

After testifying that Howard showed her twenty-seven pounds of methamphetamine in his trunk, Hancock was asked the following question and gave the following answer:

Q: When you saw the 27 pounds of speed, did he tell you whether Mr. Angelet was to get any of that?

A: Yes, Ma'am, and he was, yes.[2]

making reference to those named in the indictment.

**2.** Angelet's defense counsel raised an objection, based on hearsay, to the question that began this line of inquiry. The question concerned whether Howard had ever said anything to Hancock about any drug-related activities involving Howard and Angelet. Angelet's counsel stated his objection as a standing objection. We will treat this objection as preserving for appeal the

Angelet argues that the district court erroneously admitted Howard's alleged statement to Hancock. Angelet argues that Hancock was not a member of the conspiracy and that the statement was made either before the charged conspiracy began or was simply idle chatter between Howard and Hancock not made in furtherance of the conspiracy. The Government contends that the statement falls within the hearsay exception provided by Federal Rule of Evidence 801(d)(2)(E) because Howard made the statement to Hancock, a member of the conspiracy, in furtherance of the conspiracy.

■ For a coconspirator's statement to be admissible under Rule 801(d)(2)(E), it need not be made by a coconspirator to a coconspirator. Rather, a conspiracy must have existed involving the declarant and the defendant, and the statement must have been made "during the course and in furtherance of the conspiracy." Fed. R.Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987); *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988).

■ Angelet does not dispute that Howard, the declarant, was a member of the conspiracy. "This court applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy." *Santiago*, 837 F.2d at 1549. In addition, the determination of whether a statement is made in furtherance of a conspiracy is a determination of fact that will be disturbed only if clearly erroneous. *See Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2781; *United States v. Turner*, 871 F.2d 1574, 1581 (11th Cir.), *cert. denied*, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989). The evidence in this case shows that Howard supplied Hancock with the drugs she was selling at the time of her arrest and that he agreed to deliver more at her request. The evidence shows that Howard took Hancock with him to meet Angelet and that he showed her the twenty-seven pounds of methamphetamine in the trunk of his car. Under the liberal district court's admission of the challenged testi-

standard applied by this court, the district court's conclusion that Howard's statement was made in furtherance of the conspiracy is not clearly erroneous.

### 2.

■ Angelet also complains that the district court erroneously admitted Hancock's testimony that Howard told her in 1987 that Angelet was selling methamphetamine for him. Angelet argues that the conspiracy alleged in the indictment occurred between January 1989 and November 1989; thus, the statement made in 1987 was hearsay that could not have been made in the course of the charged conspiracy.

Even if this statement was improperly admitted, its admission does not constitute reversible error. This statement was made in the middle of Hancock's admissible testimony concerning Howard's and Angelet's meetings at the house in Henry County. Considering the evidence surrounding this statement and the other evidence of Angelet's involvement in the conspiracy, we find that the admission of this statement, if error, was harmless error.

### B. Sufficiency of the Evidence to Support the Verdict

■ Angelet contends that even if Hancock's testimony is admissible, the evidence of his involvement in the conspiracy is insufficient to support his conviction. We disagree. In reviewing a motion for judgment of acquittal, this court views the evidence in the light most favorable to the Government to determine if a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Marszalkowski*, 669 F.2d 655, 662 (11th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 167 (1982). Viewing the evidence in the light most favorable to the Government, we conclude that there is sufficient evidence to support the jury's verdict in this case.

mony.

Hancock testified that on several occasions she went with Howard to a house in Henry County to meet Angelet. At these meetings, Angelet and Howard would count large sums of money that Angelet brought to the meetings. To one of these meetings Angelet brought $27,000 in cash and to another over $30,000 in cash. During these meetings, while Howard and Angelet were counting out the bundles of cash, they would use speed. This evidence, in addition to Howard's statement that Angelet was to get some of the twenty-seven pounds of methamphetamine in his trunk, is sufficient evidence to support the jury's verdict. After all, "[p]articipation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and collocation of circumstances.' " *Glasser*, 315 U.S. at 80, 62 S.Ct. at 469 (quoting *United States v. Manton*, 107 F.2d 834, 839 (2d Cir.1939), *cert. denied*, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 102 (1940)).

### C. Limitation of Angelet's Use of Medical Records

■ Following Hancock's arrest, she was admitted to Charter Peachford Hospital for treatment of her drug addiction. During the thirty days of her treatment, Hancock's counselors took notes regarding her responses to certain questions and concerning their thoughts with regard to her problems and her progress.

During cross-examination at trial, Angelet attempted to read these notes and records to Hancock and then ask her questions about them. Specifically, Angelet attempted to ask Hancock if she told the counselors that she had a problem telling the truth or with being manipulative. Upon objection, the court ruled that Angelet could not read from the hospital records, but he could ask Hancock questions concerning whether she had problems telling the truth or with being manipulative, and if her answers were inconsistent with what she told counselors at Charter Peachford, he could impeach her with the hospital records.

■ We find no error in the district court's limitation on the use of portions of the medical records. The district court's finding that the records were admissible only for impeachment purposes is a discretionary determination that will be disturbed only if there is a clear showing of an abuse of discretion. *See United States v. Russell*, 703 F.2d 1243 (11th Cir.1983). We hold that the district court did not abuse its discretion.

In support of his contentions, Angelet cites *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir.1983); and *United States v. Partin*, 493 F.2d 750 (5th Cir.1974), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). In both of those cases, however, the records offered into evidence reflected the witnesses' mental illness and were offered to impeach the witnesses' credibility. The records reflected the witnesses' mental condition during the time periods about which they were testifying; thus, the records were highly probative of the witnesses' credibility.

Hancock's records did not reflect treatment for mental disorders; they reflected treatment for drug addiction. Thus, introduction of the complete records was not warranted because they were not, as a whole, probative of Hancock's credibility. Those portions that were inconsistent with her testimony at trial, however, would be probative of her credibility and could be used for impeachment. The district court did not abuse its discretion by limiting Angelet's use of the records in this manner.

■ Finally, Angelet contends that the district court improperly prohibited him from asking Hancock if she would be afraid if Howard was released from prison. Angelet argues that Howard was the source of Hancock's drug addiction and that she was testifying against Howard to keep him in jail so he could not tempt her into using drugs again. He argues that this shows Hancock's bias and is relevant because it goes to credibility.

The district court ruled that the question was irrelevant to Angelet's defense and prohibited him from asking the question. Like the district judge, we do not see any

relevance of this question to Angelet's defense. Whether Hancock is afraid of Howard has no bearing on her testimony with regard to Angelet. We find no abuse of discretion in the district court's ruling.

For the reasons stated above, we affirm Angelet's conviction.

### Thompson

Thompson raises two issues on appeal: (1) whether the district court erred in assigning a weight of 100 grams per marihuana plant in calculating Thompson's base offense level; and (2) whether the district court erred in refusing to grant Thompson a two-level reduction for acceptance of responsibility.

### A. Calculation of Base Offense Level

■ In accordance with a plea agreement, Thompson pleaded guilty to possession of forty marihuana plants. At sentencing, the court assigned a weight of 100 grams per marihuana plant resulting in a drug quantity of 4000 grams and a base offense level of twelve, under United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(16) (Nov. 1989).

Thompson contends that the court erred in assigning a weight of 100 grams per plant because 21 U.S.C. § 841(b)(1)(D) indicates that the actual weight of the plants should be used unless fifty or more marihuana plants are involved.

21 U.S.C. § 841(b)(1)(D) provides that:

In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, ... such person shall, ... be sentenced to a term of imprisonment of not more than 5 years....

At the time of Thompson's sentencing, U.S.S.G. § 2D1.1 provided as follows:

In the case of an offense involving marihuana plants, if the offense involved (a) 50 or more marihuana plants, treat each plant as equivalent to 1 Kg of marihuana; (b) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. Provided, however, that if the actual weight of the marihuana is

greater, use the actual weight of the marihuana.

U.S.S.G. § 2D1.1 (Nov. 1989).

Thompson argues that the assignment of 100 grams per plant is arbitrary and inconsistent with the sentencing statute and that the sentencing statute must prevail. In support of his argument, Thompson cites *United States v. Streeter*, 907 F.2d 781 (8th Cir.1990), *overruled on other grounds by United States v. Wise*, 976 F.2d 393 (8th Cir.1992), where the Eighth Circuit held that the Sentencing Commission's decision to equate one plant and 100 grams of marihuana when less than fifty plants are involved is inconsistent with Congress's determination that weight alone is determinative, rather than the number of plants, when fewer than fifty plants are involved. *Id.* at 790.

We find Thompson's reliance on *Streeter* unpersuasive. In *Streeter*, the court stated that "[i]f there were some reason to believe that the average weight of marihuana plants grown in quantities of less than fifty is one hundred grams, the Commission's choice could perhaps be defended." *Id.* The court relied on the fact that the Commission gave no rational basis for its decision to equate one marihuana plant with 100 grams of marihuana. Thus, the court concluded that the Guideline was arbitrary and should not be given effect. *Id.*

■ Subsequent to *Streeter*, the commentary to section 2D1.1 was amended and the following was added:

In cases involving fifty or more marihuana plants, an equivalency of one plant to one kilogram of marihuana is derived from the statutory penalty provisions of 21 U.S.C. § 841(b)(1)(A), (B), and (D). In cases involving fewer than fifty plants, the statute is silent as to equivalency. For cases involving fewer than fifty plants, the Commission has adopted an equivalency of 100 grams per plant, or the actual weight of the usable marihuana, whichever is greater. *The decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihua-*

*na plant equals 100 grams of marihuana.*

U.S.S.G. § 2D1.1, comment. (backg'd) (Nov. 1991) (emphasis added). We conclude that although this amendment became effective after Thompson was sentenced, it is merely a clarifying amendment that did not change the substance of the Guideline. Therefore, we may refer to it in interpreting section 2D1.1. *See United States v. Shores*, 966 F.2d 1383, 1388 n. 2 (11th Cir.1992); *United States v. Howard*, 923 F.2d 1500, 1504 (11th Cir.1991).

This amendment sets forth the rationale for the Commission's treatment of offenses involving fewer than fifty marihuana plants, U.S.S.G.App. C, at 230–31, and provides a rational basis for this treatment; therefore, we find that *Streeter* is no longer persuasive. As this court stated in *United States v. Osburn*, 955 F.2d 1500, 1506 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 290, 121 L.Ed.2d 215 "[g]iven this justification and the dictum contained in *Streeter*, the Guidelines would likely survive a direct challenge concerning the validity of applying a 100 gram per plant equivalency to offenses involving fewer than 50 plants." Today, we hold that the Guideline does survive such a challenge. We affirm the district court's calculation of the quantity used to determine Thompson's base offense level.

### B. Acceptance of Responsibility

Thompson also contends that the district court erred in refusing to grant him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. He argues that he entered a guilty plea and agreed to testify against his codefendants at trial if necessary. Further, he argues that the Government recommended a two-level reduction and that the district court abused its discretion by refusing the reduction.

The record supports the district court's decision. The probation officer who prepared Thompson's presentence report recommended that the two-level reduction be denied because Thompson had tested positive for marihuana while on probation in a related state case. Thompson admitted that due to stress arising out of his pending sentencing in this case, he had used marihuana. This court has held that the sentencing court has discretion to deny a downward adjustment for acceptance of responsibility due to the defendant's continued drug use. *United States v. Scroggins*, 880 F.2d 1204, 1215–16 (11th Cir.1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). The sentencing court's determination that the defendant is not entitled to a reduction for acceptance of responsibility is entitled to great deference and will not be disturbed unless clearly erroneous. *United States v. Pritchett*, 908 F.2d 816 (11th Cir.1990). The district court's determination here was not clearly erroneous.

For the reasons stated above, we affirm Thompson's sentence.

### CONCLUSION

The convictions and sentences of all three defendants are AFFIRMED.

AFFIRMED.