12 F.3d 215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey CLARK, Defendant-Appellant.
 No. 93-1089.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1993.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges; and WILHOIT, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Jeffrey Clark appeals the sentence imposed upon his plea of guilty to distribution of more than 50 grams of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). On appeal, defendant contends that due process requires the District Court to have discretion to exclude from "relevant conduct," drug transactions that were not necessary to secure his arrest and conviction. For the reasons set forth below, we affirm.
 
 I.
 
 2
 Defendant's sentence is the result of four transactions involving cocaine with undercover Drug Enforcement Administration Agent Robert McIntyre. McIntyre was investigating a crack cocaine trafficking organization which he believed could also supply significant quantities of heroin. The facts underlying the drug transactions are undisputed.
 
 
 3
 On November 20, 1990, Agent McIntyre purchased approximately one (1) ounce of crack cocaine (21 grams) from co-conspirators Cedric Rucker and Willie Vance. At the time of the deal, Vance stated that he could supply kilogram quantities of heroin. Defendant was not present during this sale.
 
 
 4
 On December 4, 1990, Agent McIntyre again purchased cocaine (approximately 25 grams) from Vance and Rucker. The transaction took place outside of a bar in Detroit, Michigan. Agents assigned to surveillance observed a white Pontiac automobile, in which two individuals were sitting, in the parking lot at the bar. The cocaine sold to Agent McIntyre was supplied by the driver of the Pontiac. The agents were able to make a partial description of the occupant, but no positive identification was made. During this sale, Vance again indicated his ability to acquire heroin from a supplier.
 
 
 5
 A third sale of cocaine transpired on December 11, 1990, outside the same Detroit bar as the December 4th transaction. Agent McIntyre requested heroin but was told by Vance that his supplier had not yet received the heroin. Surveillance agents observed Vance obtain the cocaine (one ounce) from the same white Pontiac but could not positively identify the driver. At the conclusion of this transaction, however, the agents knew the driver of the Pontiac was named "Jeff" and knew that he was the source of the cocaine base supplied to Agent McIntyre. Further investigation revealed that the Pontiac was registered to Luches Clark (defendant's father) at 8909 Sorrento, Detroit, Michigan.
 
 
 6
 The final cocaine purchase occurred on December 20, 1990. Prior to this sale, Agent McIntyre conferred with his supervisor about closing down the undercover operation because it had become clear that the investigation into Vance's heroin supplier was not going to be successful. One last buy, however, of four (4) ounces of cocaine was arranged. The sale took place at the same Detroit location and in the same manner as the previous two sales. Vance went to the white Pontiac, obtained the drugs (approximately 100.57 grams of cocaine) and returned to Agent McIntyre's car. At this time, McIntyre gave the arrest signal. Defendant Clark, the driver of the Pontiac, Lester Jones,[1] the passenger in the white Pontiac, and Vance were all arrested.
 
 
 7
 On May 8, 1991, defendant was charged (along with Vance, Rucker and Jones) with one count of conspiring to deliver and to possess with intent to deliver over 50 grams of cocaine base, in violation of 21 U.S.C. Sec. 846; and with four substantive counts of distribution of cocaine base, in violation of 21 U.S.C. Sec. 841(a)(1). On October 9, 1991, the day his trial was to commence, defendant pled guilty to count three of the indictment, charging him with the distribution of over 50 grams of cocaine base on or about December 20, 1990. At the plea proceeding, defendant acknowledged that he had, in fact, distributed cocaine base on December 20, 1990, and that there were more than 50 grams involved. Defendant was informed that his projected sentencing guideline range was 97-120 months, but that the statutory mandatory minimum (for distribution of over 50 grams of cocaine) was 120 months. After the plea, but before sentencing, defendant's court-appointed counsel was replaced. On March 11, 1992, defendant was sentenced to the statutory mandatory minimum term of 120 months.
 
 
 8
 After sentencing, the District Court became aware that defendant may not have received effective assistance of counsel (at sentencing) and vacated the sentence. Defendant's new counsel challenged the application of the sentencing guidelines and the statutory mandatory minimum to the defendant's conviction, alleging that the government had engaged in "sentence factor manipulation." Specifically, it was alleged that defendant should have been arrested prior to the fourth transaction, thereby reducing the quantity of drugs he would have been responsible for, thereby reducing his sentence. An evidentiary hearing was held on January 5, 1993, after which the District Court rejected defendant's challenge and sentenced him to 120 months. This timely appeal followed.
 
 II.
 
 9
 The defendant pled guilty to distributing cocaine; however, the sentencing court determined the specific quantity of cocaine for which defendant was to be held "accountable," as relevant conduct under the sentencing guidelines, and under the penalty provisions of the statute, 21 U.S.C. Sec. 841(b).
 
 
 10
 Defendant contends that the District Court erred in sentencing him to the ten-year mandatory minimum for distribution of more than 50 grams of cocaine because the government agents manipulated his sentence by continuing the drug sales well beyond that necessary for arrest or conviction. Defendant argues "[w]hen government agents manipulate a sting operation and thereby increase sentence factors, a district court has the power to exclude the tainted transaction from 'relevant conduct' as a transaction for which the defendant would not 'otherwise be accountable.' " Brief of Defendant at 9. Thus, according to defendant, his sentence should not be based on the amount of drugs seized during the fourth and final drug sale because this sale was based on transactions beyond the point necessary to secure defendant's arrest and conviction.
 
 
 11
 We conclude that the defendant's argument has no merit. The District Court does not have the discretion to exclude the defendant's fourth and final sale from "relevant conduct" simply because the government agents continued drug sales beyond the point necessary for arrest and conviction. Neither the sentencing guidelines nor 21 U.S.C. Sec. 841(b) provide that the District Court may exercise discretion to exclude particular transactions. Thus, the defendant's claim must fail.
 
 
 12
 The defendant also argues that his due process rights were violated when the government agents allegedly manipulated the quantity of drugs involved, which artificially increased his sentence. This Court has recognized that there may be circumstances under which concepts of fundamental fairness would preclude the police from increasing a defendant's sentence by manipulating the quantity of drugs with which the defendant was involved. See United States v. Sivils, 960 F.2d 587 (6th Cir.), cert. denied, 113 S.Ct. 130 (1992).
 
 
 13
 However, this case does not present facts which give rise to a due process argument. The record reveals, and the District Court found, that the fourth drug sale was a legitimate police initiative because the agents "did not have a case against Mr. Clark prior to the events of December 20th. The amount involved was not extraordinary, out of the ordinary, or any indication whatsoever there was any consciousness on the part of the agent, that by making it a 4 ounce transaction that somehow the sentence would be increased." Joint App. at 202-03. Agent McIntyre testified at the evidentiary hearing (prior to sentencing) that he extended the drug purchases in large part to investigate Vance's statements that he had a heroin source. He further testified that not all of the sources of the drug supply, in addition to Clark, had been discovered prior to the December 20th transaction; that he desired to remove as much illegal narcotics off the street and away from the users as possible; and that at the time of the fourth sale he was under the impression that he had already reached the 50 gram level by purchasing two ounces (56 grams) of crack cocaine from Clark in the previous transactions.
 
 
 14
 As the government points out, defendant's argument that no conduct beyond the minimum necessary to arrest and convict an individual may be used by district courts in sentencing ignores many of the real world considerations faced by undercover agents on the street. This Court has recognized that "[o]nce an undercover operation has begun, new conspirators, who are at first unknown to the government, may be uncovered during the course of the investigation." United States v. Payne, 962 F.2d 1228, 1232 (6th Cir.), cert. denied, 113 S.Ct. 811 (1992). Here, for example, Lester Jones, the ultimate supplier of the cocaine, appeared only at the fourth, and largest, transaction. In sum, the government agents' decision to undertake a fourth and final drug sale with defendant was neither fundamentally unfair nor offensive to principles of due process.
 
 
 15
 Here, in calculating defendant's base offense level, the District Court properly included the drugs from the fourth (i.e., "tainted") transaction. The court found nothing in the evidence "to suggest prosecutorial manipulation, misconduct, sentence manipulation and all the other words that have been used." Joint App. at 201. This finding is not clearly erroneous.[2]
 
 III.
 
 16
 Accordingly, the defendant's sentence is AFFIRMED.
 
 
 
 *
 The Honorable Henry R. Wilhoit, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Because Lester Jones had a large share of the buy money, Agent McIntyre deduced that he was the source of supply of the cocaine
 
 
 [2]
 There is some question as to the effect the defendant's plea of guilty to distributing over 50 grams of cocaine should have on his right to raise his present claim. Some courts, faced with similar claims of government misconduct as a potential mitigating factor at sentencing, have said that a defendant's right to make such a claim should be contingent upon his going to trial. See, e.g., United States v. Dickey, 924 F.2d 836, 839 (9th Cir.), cert. denied, 112 S.Ct. 383 (1991) (in "sentence entrapment" case, court stated that "at least where a defendant pleads guilty to an offense, '[w]e see no warrant for the argument that governmental ... misconduct should mitigate the sentence of an admittedly guilty defendant.' ") (quoting United States v. Streeter, 907 F.2d 781 (8th Cir.1990)). However, in United States v. Connell, 960 F.2d 191, 197 n. 9 (1st Cir.1992), the court stated "[i]n instances in which sentencing factor manipulation ... overbears the will of a defendant predisposed only to committing a less serious crime, we see no reason why the defendant should be forced to undergo the rigors of trial simply to preserve his ability to challenge the government's conduct at sentencing."