**Joseph Donald THORNBLAD, Appellant,**

v.

**Larry OLSON, M.D., Medical Director of Willmar Regional Treatment Center, Appellee.**

**No. 91–1577.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1991.

Decided Jan. 2, 1992.

Heide H. Crissey, Stillwater, Minn., argued, for appellant.

Kathy Meade Hebert, St. Paul, Minn., argued (Hubert H. Humphrey, III and Kathy Meade Hebert, St. Paul, Minn., on the brief), for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and STUART,* Senior District Judge.

ARNOLD, Circuit Judge.

This is a petition for habeas corpus brought by Joseph D. Thornblad, who has been held by the State of Minnesota since November 21, 1989, under a series of involuntary commitment orders. Thornblad argues that he is being deprived of his liberty without due process in violation of the Fourteenth Amendment to the United States Constitution because the evidence of mental illness presented at the commitment hearings was not clear and convincing, as required by *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). We disagree, and affirm the District Court's[1] judgment of dismissal.

On August 26, 1988, Thornblad assaulted two Hennepin County District Court Judges. He pleaded guilty to third-degree assault and was sentenced to fifteen months' imprisonment with an anticipated release date of November 25, 1989. While in prison, Thornblad began to show signs of mental illness, which centered around his delusions of power and control over both the legal system and state government. Because of these delusions, the State filed a petition for involuntary commitment. An evidentiary hearing was held, and the Washington County District Court concluded that the evidence was clear and convincing that Thornblad was mentally ill, and that no viable less restrictive alternatives to civil commitment existed. On November 21, 1989, the petitioner was transferred from prison to the Minnesota Security Hospital. Since that time, he has remained civilly committed by virtue of recommitment orders entered for successive six-month periods.

There is some doubt as to whether either the initial commitment or the first recommitment is properly before us. The District Court dismissed petitioner's case for failure to present any constitutional claim to the state courts, failure to exhaust available state remedies, and because the case was moot. We decline to address those procedural issues, assume for purposes of this opinion that the petitioner is entitled to a review of his claims, and reject those claims on the merits. We take this course because the issues of procedural bar, exhaustion, and mootness are complicated and doubtful. The merits, on the other hand, are simple and plain. See *Long v. Iowa*, 920 F.2d 4, 6 n. 2 (8th Cir.1990). Our choosing to decide the merits makes our own work easier. By doing so, we intend no disrespect for the state courts as interpreters of federal law.

The procedures and requirements to commit a person initially and to continue that commitment are almost identical. Both procedures require the committing court to find by clear and convincing evidence that the patient is "mentally ill." Minnesota defines a "mentally ill person" as follows:

Subd. 13. Mentally ill person. "Mentally ill person" means any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment,

---

* The Hon. William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Hon. David S. Doty, United States District Judge for the District of Minnesota.

behavior, capacity to recognize reality, or to reason or understand, which

(a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and

(b) poses a substantial likelihood of physical harm to self or others as demonstrated by:

    (i) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment, or

    (ii) a recent attempt or threat to physically harm self or others.

This impairment excludes (a) epilepsy, (b) mental retardation, (c) brief periods of intoxication caused by alcohol or drugs, or (d) dependence upon or addiction to any alcohol or drugs.

Minn.Stat. § 253B.02. If the State seeks to continue the involuntary commitment at the end of the initial commitment period, in addition to showing that the patient continues to be mentally ill, the State must show by clear and convincing evidence that "involuntary commitment is necessary for the protection of the patient or others ... and ... there is no alternative to involuntary commitment." Minn.Stat. § 253B.12, Subd. 4.

In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court held that a federal constitutional claim is stated if a criminal defendant alleges that no rational jury could have found him guilty beyond a reasonable doubt. Thornblad's theory in the present case is analogous: the federal Constitution, see *Addington v. Texas, supra,* requires that the facts justifying a civil commitment be proved by clear and convincing evidence. It follows, he argues, that he is entitled to relief in federal habeas if he can show that no rational finder of fact could have found those facts by clear and convincing evidence. We assume without deciding that this theory is legally viable.

The question that we must answer then is whether a rational person could have found by clear and convincing evidence that Thornblad was mentally ill and continued to be so, that his "commitment [was] necessary for the protection of [himself] or others," Minn.Stat. § 253B.12, Subd. 4, and that "there [was] no alternative to involuntary commitment." *Id.* Several psychiatrists and psychologists testified at each commitment hearing that Thornblad suffered from a delusional disorder, grandiose type, which substantially affected his thought, mood, perception, and orientation and grossly impaired his judgment, behavior, capacity to recognize reality, and ability to reason or understand. He also has an anti-social personality disorder.

The basis for their opinions was the history of Thornblad's behavior. For example, he asserted that he was in charge of the prison, that he either was or had the power of a judge, that he had the authority to remove the Governor and become Governor himself, and that he could change the law at will and might choose to abolish murder as a crime. He also threatened to kill the warden, various police officers, and an unidentified woman. He has since threatened the Governor as well as several judges with remarks like, "I'll teach these dum [sic] Judge's [sic] something they are not going to like and I dont [sic] care and dont [sic] mess with me or anyone ever again." Washington County District Court Order for Recommitment, No. P2–89–3912, at 3 (June 15, 1990). He also explained to several judges who received letters from him that he is the "boss of the laws" and has authority to control the court system. *Id.* Certainly a rational person could find that the threatening letters to judges, the threats to the Governor and others, and the petitioner's belief that he was either above the law or the "boss of the law" amounted to "grossly disturbed behavior or faulty perceptions" as required by Minnesota Statute § 253B.02, Subd. 13(a).

Additionally, the petitioner has no understanding of his mental illness and has admitted that he would not obtain the medical care necessary to control his mental illness if released from the State's custody. He feels that he has no mental illness to control. *In the Matter of: Joseph Donald Thornblad,* No. MI–04222, Transcript of Proceedings, at 52 (June 3, 1991). He has also recently assaulted a judge. Either of

these facts is a sufficient basis for a rational person to conclude that Minnesota Statute § 253B.02, Subd. 13(b) (likelihood of harm to self or others) has been met.

Having determined that it was reasonable for the initial committing court to find there was clear and convincing evidence that Thornblad was a "mentally ill person," we next consider the requirements for his continued commitment. It was not unreasonable to conclude that Thornblad, if released, might injure one of the persons he has threatened. Nor was it unreasonable for the state district court judges to believe that the result of Thornblad's refusal to take his medication if released might be harmful to him. Therefore, the State proved that "involuntary commitment [was] necessary for the protection of the patient or others" as required by Minnesota Statute § 253B.12, Subd. 4(2).

Finally, we will not disturb the state district courts' findings that there was no immediate alternative to involuntary commitment. They weighed the alternatives to involuntary commitment as well as the varying types of commitment. Several doctors who testified indicated that it would probably be possible at some point in the near future to move petitioner to a less restrictive, less structured environment. In fact, he was moved to Willmar Regional Treatment Center on August 1, 1991. Appellant's Brief to the Minnesota Court of Appeals, *In the Matter of: Joseph Donald Thornblad*, No. C9-91-1501, at 4 (Sept. 14, 1991). At oral argument the State indicated that he might soon be released. But at the time of commitment and recommitment, there was sufficient evidence from which the judges could have concluded, as they did, that there was no immediate alternative to commitment.

In sum, we hold that a rational person could have found by clear and convincing evidence that Thornblad was a "mentally ill person" when initially committed, and that he continued to suffer from a mental illness, as required by state law in order to commit or recommit a person involuntarily in Minnesota. Therefore, the judgment of the District Court dismissing the petition for habeas corpus is affirmed.