**UNITED STATES of America, Appellee,**

**v.**

**Leslie Anthony BLUSKE, a/k/a Tony Bluske, Appellant.**

**No. 90–5518.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1991.

Decided July 2, 1992.

---

Randall Tigue, Minneapolis, Minn., argued, for appellant.

Jeffrey S. Paulsen, Asst. U.S. Atty., Minneapolis, Minn., argued, for appellee.

Before LAY,* Chief Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

LAY, Chief Judge.

Leslie Anthony Bluske was convicted on two counts of aiding and abetting the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988), and 18 U.S.C. § 2 (1988), one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and one count of conspiracy to possess with intent to distribute cocaine in

---

* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

violation of 21 U.S.C. § 846 (1988). On appeal, Bluske seeks a new trial based on the alleged denial of his Sixth Amendment right to effective assistance of counsel. He also appeals his sentence of fifty-one months under the Sentencing Guidelines. We sustain, in part, Bluske's Sixth Amendment claim; we also find merit in his claim of error with respect to the district court's application of the Sentencing Guidelines. We therefore vacate Bluske's sentence and remand to the district court for resentencing.

## I. BACKGROUND

In May, 1989, law enforcement officers in Rochester, Minnesota commenced an undercover investigation of a drug distribution network implicating Bluske, Gerald Sparrow and Joel Tesch.[1] The investigation utilized a government informant, Dean Peters, who was given marked government funds with which to make controlled purchases of cocaine from Tesch and Sparrow. When Tesch was involved, Peters would place his cocaine order and give Tesch the marked money. Tesch would then deliver the money to Sparrow, who would drive away and return later with the cocaine, which Tesch then delivered to Peters. By the end of September, Tesch had dropped out of the picture, and Peters dealt directly with Sparrow.

Government surveillance teams following Sparrow during the period of time between his receipt of the marked money and his return with cocaine often observed Sparrow making stops at the Kar Korral, a car dealership owned by Bluske, and Bluske's residence. On at least two occasions, August 16th and 22nd, however, the surveillance team lost Sparrow during this time period and could not ascertain his movements with any degree of certainty.

On February 16, 1990, the police arrested Sparrow after he delivered cocaine to Peters. Police also arrested Bluske at the Kar Korral that same day. A search of Bluske's person uncovered $750 of the $850

marked buy money, over $2,000 in cash from his billfold and various coat pockets, and three plastic packages of cocaine totalling 53.1 grams. A search of his office led to the discovery of a gram scale, a cocaine grinder, and a common cutting agent. Following his arrest, Bluske gave the police the name of his cocaine source, Kevin Overton. This information formed the basis of a search warrant for Overton's home. No drugs were found incident to that search.

The original eleven count indictment against Bluske alleged a conspiracy to distribute cocaine from on or about August 4, 1989 through on or about February 16, 1990. In addition, the indictment charged Bluske with nine counts of distribution and one count of possession with intent to distribute. Prior to trial, but after the jury had been empaneled, the government moved to dismiss the two distribution counts which corresponded to the occasions when the surveillance team failed to track Sparrow's movements between his receipt of drug money and his return with cocaine. No evidence was introduced at trial relating to these transactions or any of the four drug transactions alleged to have occurred prior to August 4, 1989.

The jury acquitted Bluske of five distribution counts, and convicted on the remaining two counts of distribution, the possession count and the conspiracy count. Following his conviction, Bluske attempted to obtain a reduction in his sentence by cooperating with authorities. Specifically, he attempted to elicit incriminating information from his source, Kevin Overton, during recorded telephone conversations. After a few attempts were unsuccessful, the government informed Bluske that Overton had been tipped off and that Bluske could no longer expect to receive a reduction in sentence in return for cooperating against Overton.

At Bluske's sentencing hearing, Bluske objected to the probation officer's use of the drug quantities in the two dismissed counts in determining his offense level.

---

**1.** Sparrow pled guilty to all but one count of the original eleven count indictment. At his plea hearing, Sparrow denied that Bluske was the source of his cocaine except for one transaction. Tesch pled guilty to one count of the original indictment.

Bluske denied involvement in those drug transactions, and pointed out that no evidence relating to those counts was introduced at trial. The government argued that the probation officer properly relied upon information about those transactions contained in police reports viewed by the probation officer. The court characterized the transactions as part of the conspiracy or common scheme, and cited with approval the probation officer's conclusion that "evidence introduced at trial was sufficient to hold the Defendant accountable for the cocaine transactions in buys six and seven." Sent.Tr. at 41. The court then sentenced Bluske to fifty-one months imprisonment, followed by three years of supervised release.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Shortly after the prosecutor told Bluske that Overton had been tipped off, Bluske concluded that his lawyer, Thomas Bauer, was responsible. Bauer had represented Overton on non-drug related state misdemeanors, and in fact it was Overton who introduced Bluske to Bauer. Bluske sent a letter to Bauer discharging him as his lawyer and obtained new counsel, John Sheehy. Sheehy filed a motion with the court for substitution of counsel asserting the alleged conflict of interest. Although Bauer did not object to the proposed substitution and emphatically denied any misconduct, he responded with an affidavit conceding his prior representation of Overton on unrelated state charges. Bauer's affidavit, however, suggests an ongoing attorney-client relationship with Overton throughout the time period that Bauer represented Bluske. The affidavit reveals the following:

> That after defendants [sic] arrest by the State of Minnesota, authorities defendant hired affiant as council on February 21, 1990 and on March 1, 1990 State charges were dismissed against defendant and when defendant hired affiant defendant arrived with Kevin Overton who in turn introduced defendant to affiant and defendant was told that affiant had repre-

sented Overton on a non-drug related State misdemeanor offense.

> . . . .

> That affiant had previously represented Kevin Overton on a June 20, 1989 non-drug related State misdemeanor charge and then again on June 18, 1990 on a State traffic offense.

> . . . .

> That on September 5, 1990, after his conviction, defendant requested to meet with Agent Stevens and affiant, Agent Stevens, defendant and Jeff Paulson met to discuss what defendant could do to reduce his pending sentence, and defendant stated he would assist Agent Stevens in setting up the arrest of Kevin Overton and Eric Wells.

> . . . .

> That in the September 5, 1990 meeting, affiant disclosed to Agent Stevens and Paulson, that he had represented Kevin Overton on some prior misdemeanor non-drug related matters and that Overton was told he could not attend the trial as he was a sequested [sic] witness and further that Overton was very cautious around defendant as Overton was aware of the alleged statements of defendant in the search warrant Application on the search of Overton's home.

> That in the September 5, 1990 meeting, affiant told all present that Overton had asked for advice immediately after the defendant's arrest in February of 1990 and affiant had told Overton just to obey the law and affiant never discussed any of Overton's activities and Overton never was charged with anything.

> That on about September 6th or 7th, Agent Stevens telephoned affiant and *stated that Overton was very reluctant to talk on the telephone to defendant and Overton had stated that affiant had told Overton that he should not trust talking on the phone to defendant,* and affiant told Agent Stevens that he had repeatedly told Overton months before that he should not trust telephones as this is affiant's advice to all defendant's he represents.

That on or about September 14, 1990 Overton came to affiant's office and stated that he wanted to turn himself in to the Bureau of Criminal Apprehension (BCA) and confess to his violations of the law and asked affiant to represent him by going with him to the BCA and affiant declined to represent Overton.

Appellant's App. at 78, 80–81 (emphasis added).

On October 17, 1990, amid great confusion as to the nature of the hearing,[2] the district court heard Bluske's allegations of ineffective assistance of counsel. The defendant stated:

My attorney was representing a person involved in my case, Kevin Overton. And Kevin paid him money for legal advice. And I tried to operate with Paul Stevens, by making phone calls. And my attorney must have tipped off Kevin Overton, because he knew exactly all of the information that I gave the special agent.

Sent.Tr. at 3. The transcript demonstrates that the trial court confused the asserted conflict arising from Bauer's representation of Overton with a previously settled conflict related to Bauer's representation of another individual, Dean Peters. No hearing was ever held exploring the conflict of Bauer by reason of his representation of Overton.

In determining whether to permit the proposed substitution, the court noted its concern that Sheehy was unprepared for sentencing. Because Sheehy was unprepared, and the court insisted upon sentencing Bluske that day, Bluske chose to stick with Bauer. Observing Bluske's confusion and indecision, the court then offered to grant him a week to consider which lawyer he wanted. Bluske rejected the court's offer, however, and consented to sentencing with Bauer as counsel with apologies to the court for the trouble he had caused.

The court thereafter denied the motion for substitution of counsel.

Bluske seeks a new trial based on Bauer's representation of another client with allegedly conflicting interests in violation of his Sixth Amendment right to counsel. *See Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."). In order to prevail on this claim, Bluske must establish that Bauer actively represented conflicting interests, and that the conflict of interest adversely affected his representation of Bluske. *See Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *Williams v. Lockhart,* 849 F.2d 1134, 1138 (8th Cir.1988); *Edgemon v. Lockhart,* 768 F.2d 252, 255 (8th Cir.1985).

We find, particularly through Bauer's affidavit, that a serious question was raised as to Bauer's continuing representation of Overton while defending Bluske on the drug charges. The Minnesota Rules of Professional Conduct state:

Loyalty is an essential element in the lawyer's relationship with a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If a conflict arises after representation has been undertaken, a lawyer should withdraw from the representation. . . .

As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without the client's consent. . . . *Thus, a lawyer ordinarily may not act as an advocate against a person the lawyer*

---

**2.** Sheehy and Bluske did not understand that the court intended to sentence Bluske that day. They believed the hearing would only concern the motion for substitution of counsel. Although he had read the Presentence Report, Sheehy requested a continuance in order to further investigate certain objections to the drug

quantity calculation and the denial of a reduction for acceptance of responsibility. At the time he submitted the motion for substitution of counsel, Sheehy filed an objection to these findings in the Presentence Report and requested an evidentiary hearing to resolve the disputed issues.

*represents in some other matter, even if it is wholly unrelated.*

Minnesota *Rules of Professional Conduct* Rule 1.7(a) cmt. (1992) (emphasis added); *see also ABA Rules of Professional Conduct* Rule 1.7(a) (1987); *ABA Model Code of Professional Responsibility* Canon 5 (1980). Assuming Bauer told Overton not to talk to Bluske on the phone, as Overton allegedly told Agent Stevens, Bauer was not acting in Bluske's best interest. If this were true, Bluske's hope of having the government recommend a downward departure was obstructed by his own counsel.[3] While Bauer denies warning Overton specifically against Bluske, he does admit that he told Overton not to trust speaking to anyone on the phone. The trial court did not investigate this alleged conflict. We think under existing standards the court was required to do so.

The government claims that we need not reach the merits of this claim because Bluske waived his right to conflict-free counsel. We disagree. "[T]he task of ensuring that a waiver is made knowingly and intelligently requires considerable care." Wayne R. LaFave & Jerold H. Israel, 2 *Criminal Procedure*, § 11.9(c), at 35 (Supp.1991); *see also Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). In *United States v. Lawriw*, 568 F.2d 98 (8th Cir.1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978), in the context of joint representation in a criminal trial, we held that the trial court must conduct an inquiry into the defendant's understanding of the waived right, and must provide an opportunity for the defendant to question the court on the nature and consequences of such a waiver. *See also United States v. Bryant*,

766 F.2d 370, 377–78 (8th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). We warned that "without such an inquiry a finding of knowing and intelligent waiver will seldom, if ever, be sustained by this Court." *Lawriw*, 568 F.2d at 105.[4]

Although the court did conduct such a searching inquiry with respect to Bauer's prior representation of the government's informant, Dean Peters, we reject the government's argument that Bluske's validly procured waiver with respect to that conflict waived any conflict with respect to Overton. We also reject the government's other ground for waiver, that Bluske waived his right to conflict-free counsel by proceeding at sentencing with Bauer as his counsel when the court offered a continuance.

Bluske kept his knowledge of the Bauer–Overton relationship to himself throughout the trial and did not disclose this knowledge to the trial court until after his conviction. Bluske asserts that he was unaware of Bauer's alleged advice to Overton not to talk on the phone to him until after the conviction. He did know, however, that Overton consulted with Bauer on legal matters before and during his trial. While it is true that the court should have held a hearing on the alleged conflict after Bluske made known his objections at sentencing, we do not believe Bluske is entitled to a new trial. The court committed no error in failing to hold a hearing on the possible conflict prior to sentencing because Bluske chose not to alert the court to the conflict. *See United States v. Kindle*, 925 F.2d 272, 275 (8th Cir.1991). In these circumstances, to obtain a new trial by reason of ineffective assistance of counsel,

---

3. Although there are strong reasons why Overton may have wished to avoid further contact with Bluske, Bluske need not have shown that Bauer's advice was the sole cause for Overton's silence in order to find a conflict within Bauer's dual representation.

4. In 1979, two years after *Lawriw*, the Federal Rules of Criminal Procedure were amended to require trial courts to "promptly inquire with respect to ... joint representation and ... personally advise each defendant of the right to the

effective assistance of counsel, including separate representation." Fed.R.Crim.P. 44(c); *see also Wheat v. United States*, 486 U.S. 153, 161, 108 S.Ct. 1692, 1698, 100 L.Ed.2d 140 (1988) ("trial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment."); *Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220 (1981).

Bluske must "demonstrate an actual conflict of interest which adversely affected his attorney's performance...." *Id.* (quoting *United States v. Colonia,* 870 F.2d 1319, 1327 (7th Cir.1989)). Bluske fails to identify any instance of improper conduct at trial, and indeed we discern none on the record. Far from shielding Overton at trial, Bauer's direct examination of Bluske extracted the information that Overton was Bluske's cocaine supplier. We therefore find that Bluske has failed to establish clear evidence of a conflict of interest at trial and accordingly deny his request for a new trial. Although Bluske did timely advise the court of the alleged post-trial conflict at sentencing, no hearing need be held on that alleged conflict at this time because the defendant now has new counsel and, as we will discuss, the defendant is entitled to a new sentencing hearing in any event.

## III. SENTENCING GUIDELINES

In calculating Bluske's base offense level, the probation officer utilized the drug quantities alleged in each count of the original eleven count indictment against Bluske, as well as quantities from four controlled drug buys in the months preceding the date on which the conspiracy was alleged to have begun, August 4, 1989. In other words, in addition to the drugs in counts on which Bluske was convicted, Bluske was also held accountable for drugs in acquitted and dismissed counts, and in uncharged transactions. Bluske challenges the use of the drugs contained in the two dismissed counts.[5]

■ The defendant is not entirely without protection from the excesses of the aggregation rule, however, as the rule is not without its limits. For example, the defendant must be given an adequate opportunity to explain or rebut information relating to uncharged or unconvicted conduct. *Cf. United States v. Cohoon,* 886 F.2d 1036, 1037 (8th Cir.1989) (dictum). This requirement is reflected in both the Federal Rules of Criminal Procedure[6] and the Sentencing Guidelines. Section 6A1.3(a) of the Guidelines provides:

When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information, ... provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. § 6A1.3(a), p.s. The commentary to that section emphasizes that because "the court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment [,] ...

5. Without question, the aggregation rule provides the government "a fearsome tool in drug cases. It permits prosecutors 'to indict defendants on relatively minor offenses and then seek enhanced sentences later by asserting that the defendant has committed other more serious crimes for which, for whatever reason, the defendant was not prosecuted and has not been convicted.'" *United States v. Duarte,* 950 F.2d 1255, 1263 (7th Cir.1991) (quoting *United States v. Fischer,* 905 F.2d 140, 142 (7th Cir.)), *cert. denied,* —— U.S. ——, 111 S.Ct. 433, 112 L.Ed.2d 416 (1990); *see also United States v. Miller,* 910 F.2d 1321, 1332 (6th Cir.1990) (Merritt, C.J., dissenting) ("The Guidelines obviously invite the prosecutor to indict for less serious offenses which are easy to prove and then expand them in the probation office."), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991); *United States v. Restrepo,* 903 F.2d 648, 658 (9th Cir.1990) (Pregerson, J., dissenting), *withdrawn in part on rehearing en banc,* 946 F.2d 654 (9th Cir.1991). *See* Jon M. Sands & Cynthia A.

Coates, *The Mikado's Object: The Tension Between Relevant Conduct and Acceptance of Responsibility in the Federal Sentencing Guidelines,* 23 Ariz.St.L.J. 61, 74–75 (1991) ("[N]ever has the draconian disparity between a conviction and a sentence been so stark as under the Guidelines.").

6. Federal Rule of Criminal Procedure 32(a)(1) provides that before imposing sentence a court must:

(A) determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report ...;
(B) afford counsel for the defendant an opportunity to speak on behalf of the defendant; and
(C) address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence.

disputes about sentencing factors must be resolved with care." U.S.S.G. § 6A1.3, comment.; *see also United States v. McDowell*, 888 F.2d 285, 290 (3d Cir.1989) (dictum) (Guidelines impose "a scheme by which a single factual determination could significantly affect the prescribed sentence."); Susan Alexander, *Criminal Sentences That Reflect Actual Conduct: How Courts Apply the Relevant Conduct Provision of the Federal Sentencing Guidelines*, 26 Gonz.L.Rev. 537, 553 (1991) (aggregation rule can result in dramatic increase in sentencing range); Jon M. Sands & Cynthia A. Coates, *The Mikado's Object: The Tension Between Relevant Conduct and Acceptance of Responsibility in the Federal Sentencing Guidelines*, 23 Ariz.St.L.J. 61, 73 (1991); *cf. Restrepo*, 903 F.2d at 658 (Pregerson, J., dissenting) ("Upon factual findings, made without the benefit of a jury's determinations, now rest significant deprivations of personal liberty.").

The facts of this case bear out the significance of a single fact on the severity of the sentence. If the drug quantities in the dismissed counts are included, Bluske's base offense level is 22, which results in a sentencing range of 41–51 months. *See* U.S.S.G. §§ 2D1.1(c)(11), 5A. If those quantities are excluded, however, his offense level drops to 20, with a sentencing range of only 33–41 months. *See* U.S.S.G. §§ 2D1.1(c)(12), 5A. Even assuming the district court would have sentenced him at the high end of the latter range, the inclusion of the disputed drug quantities represents an additional ten months of imprisonment.

■ Once a defendant objects to a factual allegation relied upon in the presentence investigation report (PSI), the court must make "(i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." Fed.R.Crim.P. 32(c)(3)(D). If the former course is chosen, this court has stated that "the government *must introduce evidence* sufficient to convince the Court by a preponderance of the evidence that the fact in question exists." *United States v. Streeter*, 907 F.2d 781, 792 (8th Cir.1990) (dictum) (emphasis added); *see also United States v. Duarte*, 950 F.2d 1255, 1264 (7th Cir.1991).

In *Streeter*, although no evidence was introduced by the government, we held that the defendant waived his right to object on appeal by failing to assert a sufficiently specific objection to alert the court to its obligation to make a specific finding. This was not the case here. Bluske repeatedly asserted specific objections to the use of the drug quantities in the dismissed counts (buys six and seven). *See* Appellant's App. at 75–76 (objection to PSI filed by Sheehy); Sent.Tr. at 37, 38, 40. In rejecting the argument to exclude the drug quantities in the dismissed counts, the trial court stated: "The probation officer felt that the evidence introduced at trial was sufficient to hold the Defendant accountable for the cocaine transactions in buys 6 and 7. The Defendant therefore is held accountable for the total amount of cocaine that was transacted within the umbrella of the conspiracy." Sent.Tr. at 41. As noted above, however, *no* evidence was introduced at trial relating to those drug transactions as the government dismissed the two counts pertaining to those buys and they were omitted from the indictment. There is no evidence that the probation officer attended the trial or had available the trial transcript. To the extent the probation officer may have relied upon any additional evidence to support his conclusion that those transactions were part of the common scheme alleged here, it does not appear from the record that any such evidence was before, or considered by, the court.

Once alerted to Bluske's objections, the court had an obligation to receive evidence other than the probation officer's conclusions and to make a specific factual finding, based on the preponderance of the evidence, regarding the disputed facts. In *Streeter*, we stated that "[t]he presentence report [itself] is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact." *Streeter*, 907 F.2d at 791–92 (dictum). We find this case parallel to *United States v. Leichtnam*, 948 F.2d 370, 382 (7th Cir. 1991), where the court observed:

Leichtnam's presentence report was, to say the least, a poor source for estimating the quantity of cocaine for which he might be held accountable. All his PSI report says is that an Assistant United States Attorney told the probation officer preparing the presentence report that the government believed that approximately four kilograms was the right figure. There is no basis given for that conclusion. Why not three kilograms? Or five? These are obvious questions, but no less crucial for being obvious. A finding of either three kilograms or five rather than four would have meant a different sentence for Leichtnam. The PSI report, nonetheless, gives no reasons for the four kilogram figure—that "the government indicates Mr. Leichtnam was responsible for approximately four kilograms of cocaine" is not a reason; it is not even a conclusion. If the report had been expressly adopted by the district judge, which it wasn't, it still would not have sufficiently explained his sentence.

We now hold that the district court erred in relying solely on the presentence report which contained a baseless conclusion of the probation officer to resolve this disputed factual issue. We vacate Bluske's sentence and remand for resentencing consistent with this opinion.