UNITED STATES of America, Plaintiff–Appellee,

v.

Kelly Lynn MAHLER, Defendant–Appellant.

No. 92–1093.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1992.

Decided Jan. 25, 1993.

Craig Cascarano, Minneapolis, MN, argued, for defendant-appellant.

Thomas Wright, Asst. U.S. Atty., Sioux Falls, SD, argued, for plaintiff-appellee.

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

Before MCMILLIAN, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The appellant contends that the district court improperly (1) refused to permit him to withdraw his guilty plea, (2) relied on the appellant's three prior DWI convictions in determining the appellant's criminal history under the Federal Sentencing Guidelines, and (3) included an excess amount in determining the money involved in the money laundering charge to which the appellant pleaded guilty. We uphold the district court's ruling on the first two issues, but vacate the ruling on the third issue and remand the case to the district court for an evidentiary hearing on that issue.

### I.

An 18–count indictment filed in the United States District Court for the District of South Dakota charged the appellant, Mahler, with drug offenses, tax evasion, and money laundering. Pursuant to a plea agreement, Mahler pleaded guilty to two counts. The district court ** sentenced Mahler to 105 months imprisonment, and three years of supervised release thereafter.

### II.

Mahler first contends that the district court erred in refusing to permit him to withdraw his guilty plea. He asserts that when he entered into the plea agreement the government "led him to believe his guideline range was be [sic] 63–78, not the 87–108 months as calculated by the probation office," and that had he known that his Guideline range would be 87–108 months, he would not have entered into the plea agreement. The record, however, refutes the factual basis of this claim and fully supports the district court's refusal to permit withdrawal of the plea.

** The Honorable John B. Jones, Chief Judge, United States District Court for the District of South Dakota.

A. The indictment was filed in March 1991. In June 1991, Mahler pleaded guilty to two counts of the indictment charging conspiracy to distribute drugs and tax evasion. Two months later, however, in August, the district court permitted Mahler to withdraw that guilty plea.

Pursuant to a plea agreement, Mahler again pleaded guilty to two counts of the indictment on November 18—this time to money laundering and tax evasion. In December, Mahler moved for a second time to withdraw his guilty plea. His motion stated: "1. Defendant believed, based upon conversations with the United States Attorney and the United States Probation Office, that his sentencing guidelines would be, at the most, 63–78. Based upon the probation officer's calculations and recommendation, Defendant feels he can do no worse by going to trial." After a hearing, the district court denied the motion.

Mahler relies primarily upon an October 9, 1991 letter to his attorney from the Assistant United States Attorney who was prosecuting the case, which enclosed a copy of a proposed plea agreement. The prosecutor stated in the letter:

I have done a preliminary calculation under the sentencing guidelines, and based upon my brief calculation, the Defendant would be placed at level 26 for the money laundering count.

The letter further stated:

Assuming the Defendant gets two points for acceptance of responsibility, this puts him at a level 24 which calculates under a criminal history category of 3 to 63–78 months. This is fairly close to what we originally were looking at in our earlier plea agreement. The United States will also agree to recommend a sentence within the guideline range.

The plea agreement, dated November 18, 1991, was signed by Mahler, his attorney and the prosecutor. After stating that "[a]t the sentencing the United States agrees to recommend that the Court sentence the defendant within the guideline range as determined by the U.S. Probation Office, and make argument in support therein," the plea agreement continued:

Any recommendation made by the United States or the Defendant is not binding on the Court and the Defendant may not withdraw his plea of guilty if the Court rejects any recommendation.

The plea agreement did not refer to any specific Guideline numbers and provided: "It is further understood and agreed that no additional promises, agreements or conditions have been entered into other than those set forth in this agreement, and that this agreement supersedes any earlier or other understanding or agreement."

Prior to accepting Mahler's guilty plea, the district court conducted an extensive colloquy with him. After first answering "No" to the question whether there was "anything that you thought was part of the plea agreement that's been left out of this written plea agreement?," Mahler answered "Yes" to the question whether the plea agreement was "a complete understanding—a complete writing down of your understanding of what the plea agreement was?" Mahler answered, "Yes" to the following questions:

Mr. Mahler, do you understand that if the Court does not follow the recommendations for sentencing made by either your attorney or the United States Attorney, that you would not be able to withdraw any plea of guilty entered into under this plea agreement even though I might impose a sentence greater than that recommended by either attorney; do you understand that?

Mr. Mahler, do you understand that the final application of the sentencing guidelines in this case cannot be determined until after there's been a presentence report prepared and the Court has made findings as to what the facts are that are—that go into making up the guideline sentence; do you understand that?

And do you understand any attempt to determine what the guideline range is at this time cannot be done with any degree of certainty and that the final guideline range may be higher than your—than you now expect it to be; do you understand that?

And do you understand that if it proves to be higher than you now expect it to be, that you wouldn't be able to withdraw any plea of guilty entered under this plea agreement?

Later, in denying the motion to withdraw the plea, the court stated:

It is the Court's view under the Guidelines Sentence procedures that the final Guideline range cannot be determined until after there's been a presentence investigation prepared and until after the Court has made its factual findings as to the various elements that make up a Guideline Sentence and the Court as a matter of policy in all pleas of guilty advises counsel that the final range may be higher than that anticipated by them at the time they enter a plea of guilty and the Court did so in this case.

The fact that the Guideline range, as set out in the presentence investigation, contains a range higher than that believed or hoped for by the defendant is not a basis for a withdrawal of the plea and the Court, therefore, denies the Motion.

■ B.  Rule 32(d) of the Federal Rules of Criminal Procedure provides that if a motion for withdrawal of a guilty plea is made before sentence, the court "may" permit withdrawal of the plea "upon a showing by the defendant of any fair and just reason." "[T]he trial court has broad discretion in determining whether to permit a defendant to withdraw guilty pleas," *United States v. Jones*, 908 F.2d 365, 369 (8th Cir.1990), and "[a] district court's refusal to grant such a motion is reviewed under the abuse of discretion standard." *United States v. Thompson*, 906 F.2d 1292, 1298 (8th Cir.), *cert. denied*, 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990).

■ The sole ground upon which Mahler sought to withdraw his plea was that the plea agreement has misled him into believing that under the Guidelines his imprisonment would be for a shorter term than he actually received.  Nothing in the plea agreement so indicated, however.  To the contrary, the plea agreement informed Mahler that he "may not withdraw his plea

of guilty if the Court rejects any recommendation" by the government.  The prosecutor's letter of October 9, 1991, written six weeks before the plea agreement was executed, merely reflected the prosecutor's "preliminary" and "brief calculation" of what the Guideline level would be (26) and the plea agreement did not refer to that or any other numerical level.  Moreover, the plea agreement stated that it "supersedes any earlier or other understanding or agreement."

Prior to accepting the plea, the court repeatedly and explicitly made certain that Mahler understood that the sentence could not be determined until after the presentence report was submitted, and that if that sentence should be higher than what Mahler expected, he could not withdraw his plea.

In all the circumstances, Mahler cannot now complain that he was entitled to withdraw his plea because, when he made it, he was under the misapprehension that his sentence would be in the 63–78 month range.  *United States v. Hoelscher*, 914 F.2d 1527, 1543–44 (8th Cir.1990) (defendant's alleged misunderstanding of Guideline range provided no basis for setting aside his guilty plea), *cert. denied sub nom Giuffrida v. United States*, — U.S. —, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991).  *Cf. United States v. Sweeney*, 878 F.2d 68 (2d Cir.1989) (attorney's mistaken prediction of expected sentence is not grounds for defendant to withdraw guilty plea).

Mahler complains that the government failed to comply with its undertaking in the plea agreement to recommend that he be sentenced within the Guideline range as determined in the presentence report.  This is an unconvincing basis for permitting him to withdraw his plea because (1) he recognized that the court might disregard the government's recommendation and that such action would not justify withdrawal of his plea and (2) the sentence of 105 months was within the Guideline range of 87–108 months that the presentence report recommended and the court adopted.

In short, Mahler had not given "any fair and just reason" for permitting him to

withdraw his guilty plea. The district court did not abuse its discretion in refusing to permit him to do so.

### III.

■ Section 4A1.1 of the Guidelines directs that the court add the following points for sentences imposed within ten years of the commencement of the current offense: two points for each prior sentence of imprisonment of at least 60 days and one point for each other prior sentence. U.S.S.G. §§ 4A1.1(b), (c). Section 4A1.2(c)(2) states that sentences for "[m]inor traffic infractions (e.g., speeding)" are never considered. The Guidelines provide that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c)." U.S.S.G. § 4A1.2, comment. (n. 5).

In the present case, the district court, in determining Mahler's criminal history, added four points to cover Mahler's three DWI convictions, two in 1981, for each of which he was fined and placed on probation (one point each), and one in 1984, for which he was sentenced to and served 120 days in jail (two points).

Mahler recognizes, as he must under the Guidelines, that prior DWI convictions are to be included in determining a defendant's criminal history if they come within the Guidelines standards, which Mahler's three DWI convictions do. He argues, however, that the district court should have departed downward from the Guidelines because "these stale and remote traffic violations should not be used to increase Appellant's potential sentence from a minimum of 70 months to a maximum of 108 months. These convictions have no basis on which to determine Appellant's dangerousness. They are totally unrelated to the indicated offense, and remote in time." He relies upon the following policy statement in the Guidelines:

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.

U.S.S.G. § 4A1.3, p.s.

This statement merely suggests circumstances in which the court, upon "conclud[ing] that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category" "may" "consider a downward departure from the guidelines." *Id.* In this case, the district court considered, but rejected, such a downward departure. "[T]he exercise of discretion by a district court to refuse to depart downward is nonreviewable by this Court." *United States v. Murphy,* 899 F.2d 714, 718–19 (8th Cir.1990) (citing *United States v. Evidente,* 894 F.2d 1000, 1003 (8th Cir.), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990)). Accordingly, we cannot consider Mahler's challenge to the district court's discretionary refusal to depart downward because of the alleged staleness and minor nature of Mahler's three prior DWI convictions.

### IV.

A. In determining the offense level for money laundering, section 2S1.1(b)(2) of the Guidelines directs that, if the value of the funds exceeds $100,000.00, the offense level is to be increased by specified amounts depending upon the value. The district court found that the value of the funds exceeded $350,000.00, which under the Guidelines required a three-level increase. U.S.S.G. § 2S1.1(b)(2)(D).

The presentence report concluded, based on the grand jury testimony of Mahler's

two accomplices in the drug trafficking scheme and information in investigative reports, that Mahler received $458,000.00 from these accomplices for cocaine and marijuana he sold to them, and that "[t]he money the defendant received from drug trafficking represents financial transactions which were concealed and laundered in violation of the statute."

At the sentencing hearing, Mahler contended that there was no evidence that he laundered $458,000.00. He argued that the grand jury testimony of the two accomplices was not believable, that the court could not accept that testimony without hearing the witnesses and determining their credibility, and that the total amount that Mahler received from the drug sales could not be treated as laundered because it did not reflect the amount Mahler paid to his suppliers and his other "business" expenses. According to Mahler, "the Government's own calculations ... indicate that there is [sic] three to five houses all purchased with narcotic-related money ... and those total values amount to less than $100,000.00. ... [T]here is no evidence ... that indicates that there was any money laundered in excess of $100,000.00."

In response to a question from the court regarding what evidence was before it that showed the testimony of the two accomplices to be "erroneous," Mahler's lawyer replied:

I'm not suggesting it is erroneous. I am suggesting that the Court can make no determination at all about their credibility because the Court hasn't had an opportunity to view those people.

Now, if the Court had some additional evidence to indicate that more than $100,-000.00 had been laundered, some empirical evidence, then I believe the Court would be in a position of making some finding of fact, but we don't have that here.

The district court rejected Mahler's objection to the presentence report's determination that Mahler had laundered more than $350,000.00. The court stated:

it is the view of the Court that the function of a Presentence Report is to determine facts which are then subject to litigation, in the event that either party feels that the facts are not accurate. But it is the view of the Court that in the absence of contrary facts the Court can accept as true the facts contained in the Presentence Report and that it is insufficient for the defendant to assert that any particular paragraph has not been proved by a preponderance of the evidence, when there is no evidence contradicting such factual assertions in the Presentence Report.

The court concluded that the preponderance of the evidence established the amount of money laundering as determined in the presentence report.

■ B. "The District Court enjoys wide discretion in making sentencing determinations.... [U]ncorroborated hearsay evidence can be properly considered by the sentencing court provided the defendant has had an opportunity to explain or rebut the evidence." *United States v. Cohoon*, 886 F.2d 1036, 1037 (8th Cir.1989) (citations omitted). *See also United States v. Evans*, 891 F.2d 686, 688 (8th Cir.1989) ("Uncorroborated hearsay evidence contained in a presentence report may be considered by the sentencer provided the persons sentenced are given an opportunity to explain or rebut the evidence."), *cert. denied*, 495 U.S. 931, 110 S.Ct. 2170, 109 L.Ed.2d 499 (1990). To be considered, however, the hearsay evidence must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a), p.s., *quoted with approval in United States v. Wise*, 976 F.2d 393, 402 (8th Cir.1992) (en banc).

■ The hearsay statements in the presentence report, upon which the district court based its finding on the amount of money that Mahler laundered, did not have "sufficient indicia of reliability to support [their] probable accuracy."

The conclusion in the presentence report that Mahler received $458,000.00 from the sale of drugs to his two confederates, was based primarily upon the grand jury testimony of those witnesses. It is unclear, based on what Mahler's lawyer told the

court, whether Mahler is challenging that conclusion or only the further conclusion that Mahler laundered all (or at least more than $350,000.00) of that money. Although the presentence report stated that "[t]he money the defendant received from drug trafficking represents financial transactions which were concealed and laundered," nothing in the presentence report justifies or supports the latter conclusion.

The grand jury testimony of the two confederates is neither quoted nor summarized. Although those witnesses apparently testified about the amounts they paid Mahler for the drugs he sold them, it is unlikely that they also testified that Mahler laundered the money. The latter conclusion in the presentence report thus appears just as "baseless [a] conclusion" as the conclusion in the presentence report in *United States v. Bluske*, 969 F.2d 609, 617 (8th Cir.1992), regarding the amount of cocaine for which the defendant should be sentenced. That amount included two sales with respect to which the government had dismissed counts in the indictment and introduced no evidence.

The presentence report noted that Mahler

> admits that he laundered funds from the sale of marijuana and cocaine. He adds, however, that the dollar amounts were far less than alleged by the prosecution. The defendant points out the dollar amounts do not take into account the payments he had to make to his suppliers nor the other costs that are associated with "doing business". He admits that whatever profits were left over, he deposited into his account and used with other funds to purchase rental properties in Sioux City, IA.

At the sentencing hearing, Mahler's counsel made the same points.

In *Bluske*, we stated:

> Once a defendant objects to a factual allegation relied upon in the presentence investigation report (PSI), the court must make "(i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account

in sentencing." Fed.R.Crim.P. 32(c)(3)(D). If the former course is chosen, this court has stated that "the government *must introduce evidence* sufficient to convince the Court by a preponderance of the evidence that the fact in question exists." *United States v. Streeter*, 907 F.2d 781, 792 (8th Cir.1990) (dictum) (emphasis added); *see also United States v. Duarte*, 950 F.2d 1255, 1264 (7th Cir.1991).

    •    •    •    •    •

> Once alerted to Bluske's objections, the court had an obligation to receive evidence other than the probation officer's conclusions and to make a specific factual finding, based on the preponderance of the evidence, regarding the disputed facts. In *Streeter*, we stated that "[t]he presentence report [itself] is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact." *Streeter*, 907 F.2d at 791–92 (dictum).

969 F.2d at 616.

■ Here, as in *Bluske*, the district court chose the course of making a finding with respect to the allegation in the presentence report, which Mahler challenged, that Mahler had laundered $458,000.00. The court therefore was required to receive evidence on the issue and to base its findings on the preponderance of the evidence.

As noted, once a defendant challenges a factual statement in a presentence report, "the government must introduce evidence" to establish that fact by a preponderance of the evidence. Here the government did not introduce such evidence. The conclusory hearsay statements in the presentence report, based on the hearsay grand jury testimony, was insufficient to sustain the government's burden. As noted, "[a] 'presentence report is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact.' [*United States v.*] *Streeter*, 907 F.2d at 791–92." *United States v. Wise*, 976 F.2d at 404. The report's summary in this case of the grand jury testimony is not a sufficient basis for a district court to make its own finding, as it is required to do, on a disputed factual issue.

The presentence report itself reflects that Mahler disputed the conclusion that he laundered all the money he received on the drug sales, and the report provides no reasons, explanation or evidence why the report reached that conclusion. There was a disputed issue of fact on this issue, and the district court could not just rely on the probation officer's resolution of the conflict. Once Mahler challenged that factual conclusion, the government was required to introduce evidence to show by a preponderance of the evidence, the amount of money Mahler had laundered. The probation officer's conclusion that that was the correct amount was an insufficient basis to support the district court's finding. *Bluske*, 969 F.2d at 617; *United States v. Leichtnam*, 948 F.2d 370, 382 (7th Cir.1991).

The judgment of the district court is affirmed insofar as it refused to allow Mahler to withdraw his guilty plea and relied upon Mahler's three prior DWI convictions in determining Mahler's criminal history. The sentence is vacated insofar as it was based on the finding that Mahler laundered more than $350,000.00, and the case is remanded to the district court for resentencing consistent with this opinion. In so doing, we intimate no opinion on whether whatever evidence may be introduced on the remand will refute or support the presentence report's conclusion regarding the amount of money Mahler laundered.