**UNITED STATES of America, Plaintiff,**

v.

**Joe Alfred THOMAS, Jr., Defendant.**

**No. CR 88–72.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Aug. 12, 1993.

*ORDER*

HANSEN, Circuit Judge, Sitting by Designation.

The defendant has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his previously imposed sentence for (1) distribution of cocaine and (2) conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841 & 846. He also has moved to proceed in forma

pauperis. The § 2255 motion is currently before the court for initial review pursuant to Rule 4, Rules Governing Section 2255 Proceedings in the United States District Courts. The court, having now had the opportunity to review the file, the transcripts of the proceedings held in the defendant's criminal case, and the pending motion, makes the following findings of fact, determines conclusions of law, and enters the following order.

### FINDINGS OF FACT

1. The defendant was charged in a six-count indictment with four counts of distribution of cocaine, one count of possession of a firearm as a felon, and one count of conspiracy to distribute and possess with intent to distribute cocaine. On April 21, 1989, the defendant appeared in open court, represented by counsel, and, pursuant to a written plea agreement with the government, entered pleas of guilty to the distribution allegation contained in Count 4 and the conspiracy allegation contained in Count 6. The plea proceeding lasted nearly two hours; the transcript is 54 pages long.

2. On July 17, 1989, the defendant was sentenced to 262 months of imprisonment on Count 6 and 210 months of imprisonment on Count 4, the prison terms to be served concurrently; five years of supervised release; restitution of $2,525; and $100 in special assessments. The defendant appealed, arguing that the district court erred by (1) informing him that his state-court drug conviction would not be used to enhance his sentence, (2) using two state-court convictions to find him a career offender and thereby increasing his sentence, and (3) failing to make specific findings regarding certain disputed facts in the presentence report. *See United States v. Thomas*, 894 F.2d 996, 997 (8th Cir.), *cert. denied*, 495 U.S. 909, 110 S.Ct. 1935, 109 L.Ed.2d 298 (1990). The court of appeals affirmed. *Id.* at 998.

3. In his current § 2255 motion, the defendant asserts three grounds for relief. First, as Ground One, he attacks his guilty plea by alleging that neither he nor his counsel anticipated that he would be sentenced as a career offender. Second, as Ground Two, he attacks the district court's determination that he was a career offender. Third, in a claim that somewhat duplicates Ground One, he claims in Ground Three that his guilty plea should be set aside because he believed that his sentence would reflect his cooperation in other prosecutions.

4. Pertinent portions of the transcript of the plea proceeding (at which the defendant was sworn to tell the truth) conducted on April 21, 1989, reveal that the following occurred:

> THE COURT: Now, you're specifically advised that the maximum punishment you expose yourself to if you plead guilty to Count 4 of this Indictment is a prison term of not more than 20 years, a fine of not more than $1,000,000, or both such fine and imprisonment, together with a term of supervised release of three years' duration and a $50 special assessment. That $50 special assessment must be assessed against any person who pleads guilty to a federal felony.
>
> . . . .
>
> THE COURT: Now, you're specifically advised that the maximum punishment you expose yourself to if you plead guilty to Count 6 of the Indictment is a prison term of not to exceed 40 years, a fine of not more than $2,000,000, a supervised release period of not more than five years, together with a $50 special assessment. Do you have any questions about the maximum punishment you expose yourself to if you plead guilty to Count 6 of the Indictment?
>
> THE DEFENDANT: Yes.
>
> THE COURT: My question was, do you have any question about it?
>
> THE DEFENDANT: No, I'm sorry.
>
> THE COURT: Do you understand it?
>
> THE DEFENDANT: Yes.
>
> . . . .
>
> THE COURT: Have there been any promises or predictions made to you that you would receive a lighter sentence from the Court if you pleaded guilty rather than had the jury determine your guilt?
>
> THE DEFENDANT: No.
>
> THE COURT: Apart from the plea agreement between you and the Govern-

ment, have there been any other promises or predictions of any kind made to you which have influenced your decision to plead guilty?

THE DEFENDANT: No.

(Plea Tr. at 12, 17–18, 19.)

5. After counsel for the government, detailed the provisions of the plea agreement, the court continued its questioning of defense counsel and the defendant:

THE COURT: Mr. Mundy, is the agreement—pardon me, is your understanding of the agreement the same understanding Mr. Murphy tells me he has of it?

MR. MUNDY: Yes.

THE COURT: And, Mr. Thomas, is your understanding of the agreement the same understanding that Mr. Murphy tells me he has?

THE DEFENDANT: Yes, it is.

THE COURT: Are there any additional terms or conditions of that agreement that may have been inadvertently omitted by Mr. Murphy in his explanation of it?

THE DEFENDANT: No.

THE COURT: As I told you earlier in this proceeding, this case falls under the Sentencing Reform Act of 1984 and the new federal sentencing guidelines that have been promulgated for judges to use in determining the sentences in criminal cases. Have you and Mr. Mundy had a chance to visit about how those guidelines might apply to your case?

THE DEFENDANT: Yes, I have, Your Honor.

THE COURT: Do you understand that the Court is not going to be able to determine the guidelines sentences for you until after the presentence report has been completed and you and the government have had an opportunity to challenge any facts reported by the probation officer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that after it has been determined what guideline applies to a case, the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that under some circumstances you or the Government may have the right to appeal the sentence that is imposed?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that for these offenses to which you say you want to plead guilty that parole has been abolished and that if you are sentenced to prison for those offenses you will not be released on parole?

THE DEFENDANT: Yes, sir.

THE COURT: Do you also understand that if the sentence imposed upon you is more severe than you may have expected, that you will still be bound by your plea agreement and by your plea of guilty, that you will have no right to withdraw your guilty pleas?

THE DEFENDANT: Yes.

THE COURT: You can appeal the sentence imposed if you believe it illegal or too severe or outside the guideline, but you can't back up from your plea agreement and from your plea of guilty and go back to square one and start all over with a jury trial. Do you understand those matters?

THE DEFENDANT: Yes, I do.

    . . . .

[THE COURT:] You're specifically advised, Mr. Thomas, that a plea of guilty standing alone with nothing more behind it is sufficient legal authority for the judge to impose upon the defendant who pleads guilty the maximum sentence authorized by the law if the judge determines that such a sentence is either necessary or appropriate. Do you understand that?

THE DEFENDANT: Yes, I do.

    . . . .

THE COURT: If you plead guilty here today, Mr. Thomas, you're going to be taking your chances with the Court at sentencing time. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And just so there's no misunderstanding between us, Mr. Thomas, do you understand that if you plead

guilty here today you're putting the next 60 years of your life and $3,000,000 of your money on the line?

THE DEFENDANT: Yes.

THE COURT: So understanding, do you wish to pursue this guilty plea proceeding further or do you want to stand jury trial?

THE DEFENDANT: Pursue it further.

THE COURT: Go with the guilty plea?

THE DEFENDANT: Yes.

THE COURT: Do you believe that you have any deal or arrangement or understanding with the Court that you will receive anything less than the maximum sentence in this case?

THE DEFENDANT: Yes.

THE COURT: Let me repeat the question for you. Listen to it carefully. Do you believe that you have any deal or arrangement or understanding with the Court that you will receive anything less than the maximum sentence?

THE DEFENDANT: No.

THE COURT: The plea agreement between the parties is approved.

(*Id.* at 25–28, 29–30.)

6. The presentence report stated that the defendant was a career offender pursuant to U.S.S.G. § 4B1.1. Upon learning of that potential enhancement, the defendant did not move to withdraw his guilty plea. Instead, the defendant objected to that portion of the presentence report. The court concluded that the career offender provision applied, thus increasing the defendant's total offense level from 30 to 34. The court of appeals affirmed the district court's conclusion, stating:

The second felony conviction was a February 1987 conviction for assault with intent to inflict serious bodily injury for which Thomas received a sentence of two years. Although this offense is classified as an aggravated misdemeanor under state law, the District Court properly found that the conviction was a prior felony pursuant to the Guidelines which define [a] prior felony conviction as a prior conviction "for an offense punishable by death or imprisonment for a term exceeding one year, re-

gardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2, comment. (n. 3).

*Thomas,* 894 F.2d at 997.

7. The plea agreement between the defendant and the government contained a provision which required the government "to inform the court of any cooperation by the defendant and ask the court to give due consideration to that cooperation in rendering sentence." (Plea Tr. at 24.) The agreement did not obligate the United States to move for a downward departure for substantial assistance under U.S.S.G. § 5K1.1 (Policy Statement). At sentencing, the government declined to make any motion for departure. The defendant made his own motion for a downward departure for substantial assistance rendered to the government in the identification and prosecution of another under § 5K1.1. The government objected that the court could not entertain a defense motion under § 5K1.1, and the government further objected on the basis that the defendant had not rendered the degree of assistance that could be characterized as substantial. The court overruled the government's jurisdictional objection and proceeded to hear about the extent, nature, and duration of the assistance the defendant had provided to the government. After permitting the defendant to make his best case for a substantial assistance departure the court denied the motion on its merits. (Sent.Tr. at 30–37.) In its sentencing argument to the court the government told the court about the cooperation the defendant had given, and asked the court to take that cooperation into account in determining where within the identified sentencing range of 262–327 months of imprisonment to sentence the defendant. (*Id.* at 37–38.) When the court pronounced sentence it indicated that while the defendant's cooperation had not been enough to merit a departure for substantial assistance it was a reason to sentence the defendant at the bottom of the range. (*Id.* at 57.)

### CONCLUSIONS OF LAW

1. The court has jurisdiction over the pending motion. 28 U.S.C. § 2255.

■ 2. In Ground One, the defendant contends that his guilty plea should be set aside because he was unaware that he could be sentenced as a career offender and because he received ineffective assistance of counsel prior to his plea. To succeed on this claim, the defendant must prove that his decision to plead guilty was not "a voluntary and intelligent choice among the alternative courses of action open to" him. *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *see also Blalock v. Lockhart,* 977 F.2d 1255, 1256 (8th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1618, 123 L.Ed.2d 178 (1993).

3. In the first part of Ground One, the defendant alleges that his plea was not voluntary and intelligent because he entered his guilty plea "without a full understanding of the penal consequences of his plea." (Mot. at 4.) This claim is belied by the transcript of the plea proceeding. The court informed the defendant of the maximum sentence prescribed by law, as required by Fed.R.Crim.P. 11(c)(1). The court also informed the defendant that the sentencing guidelines applied and would control the determination of his sentence. The court further explained that the guidelines-mandated sentencing range could not be determined until a presentence report was completed. This information is sufficient. *See Thomas,* 894 F.2d at 997 ("The District Court is not required to inform the defendant [during a plea proceeding] of the applicable guideline range or the actual sentence he will receive."); *see also United States v. Wallace,* 895 F.2d 487, 490 (8th Cir.1990) (holding that defendant had actual notice that career offender sentence of 262 months could be imposed because he knew his maximum sentence could be 30 years (360 months) regardless of any sentence suggested by plea agreement).

4. Furthermore, the defendant stated at the plea proceeding that he had received no promises or predictions about his sentence, and the court nonetheless warned the defendant that any assurances would be meaningless. The defendant stated that he understood the court's warnings. *See Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Under these circumstances, the defendant cannot now attempt to prove that his plea was not voluntary and intelligent on the ground that he did not understand the consequences of his plea. *See United States v. Mahler,* 984 F.2d 899, 902 (8th Cir.1993); *United States v. Hoelscher,* 914 F.2d 1527, 1543–44 (8th Cir.1990), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991).

■ 5. In the second part of Ground One, the defendant alleges that his guilty plea was not knowing and voluntary because "his trial lawyer did not discuss with him prior to his guilty plea the fact that he could be convicted as a career offender." (Mot. at 4.) Ineffective assistance of counsel is one basis on which a defendant may claim that his plea was not knowing and intelligent. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Baxter v. United States,* 966 F.2d 387, 389 (8th Cir. 1992). To succeed on this claim, the defendant must prove that "[1] counsel's representation fell below an objective standard of reasonableness and [2] the deficient representation prejudiced the defense." *Baxter,* 966 F.2d at 389 (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). To prove the first requirement, the defendant must prove that his counsel's representation was "outside 'the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). To prove the second requirement, the defendant must prove "that but for counsel's errors, [he] would have insisted on going to trial rather than plead guilty" and that, with effective assistance, he would have succeeded at trial. *Blalock,* 977 F.2d at 1257; *see also Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (explaining that a defendant has not suffered "prejudice" under *Strickland* unless the result is fundamentally unfair and unreliable); *Jackson v. Lockhart,* 992 F.2d 167, 169 (8th Cir.1993) (applying *Fretwell* ).

■ 6. The defendant's ineffectiveness argument fails because he cannot prove that

counsel was objectively unreasonable or that any attorney error prejudiced him. The Sentencing Guidelines do not permit a quick and easy determination of a defendant's sentence. A defendant is not entitled to an accurate prediction of a yet-to-be-determined Guidelines range. *See United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989) (holding that counsel's mistaken prediction of Guidelines range does not constitute fair and just reason to set aside plea under Fed. R.Crim.P. 32(d)), *cited in Mahler,* 984 F.2d at 902; *Hoelscher,* 914 F.2d at 1544. The defendant's right to be apprised of the court's sentencing options is no greater than the provisions of Fed.R.Crim.P. 11(c)(1), which requires only that the court inform the defendant of the applicable mandatory minimum and maximum sentences. Thus, by alleging that counsel failed to predict the application of the career offender guidelines to his case, the defendant cannot prove that his counsel's performance was objectively unreasonable or outside the normal range of competence. *See Baxter,* 966 F.2d at 389.

■ 7. Furthermore, even if the court were to find that counsel unreasonably predicted the defendant's sentencing range, the defendant cannot prove that he was prejudiced by that advice. At the plea proceeding, the court asked the defendant whether any of his understandings were not expressed by the plea agreement, and the defendant answered in the negative. The court took additional pains to inform the defendant that any promises or predictions regarding his sentence were not valid because the presentence report had not been prepared and because the court retained limited discretion to fix a sentence. Even if the defendant was misinformed by his counsel, the court's explanations during the lengthy plea proceeding would have cured any such misunderstanding. Thus, the defendant cannot prove that he was prejudiced by any deficiencies in his representation. As a result, he cannot prove that his plea was not voluntary and intelligent on the ground that he received ineffective assistance of counsel prior to his plea. *See Baxter,* 966 F.2d at 389.

■ 8. In Ground Two, defendant alleges that he should not have been designated a career offender because one of the two prior convictions relied upon by the court, his 1987 conviction for assault with intent to inflict serious injury, is not within the definitions of U.S.S.G. § 4B1.2(1). (Mot. at 5.) In support of this argument, the defendant cites *United States v. Whyte,* 892 F.2d 1170 (3d Cir.1989), *cert. denied,* 494 U.S. 1070, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990), which affirmed the district court's finding that the defendant was a career offender.

9. The second claim of the defendant's pending motion is closely related to the defendant's second claim raised on his prior direct appeal. There, he argued that he should not have been designated a career offender because the two prior state convictions on which the district court relied were not felonies. The similarity of these two claims suggests that the court perhaps should not consider the merits of this claim because the defendant raised it in an earlier proceeding or because he failed to raise it in an earlier proceeding. If the court were to raise this issue *sua sponte,* the defendant would be entitled to an opportunity to plead facts justifying an exception to dismissal. *See United States v. Fallon,* 992 F.2d 212, 213 (8th Cir.1993). The court will not raise this procedural issue, however, because the court can dispose of defendant's second claim on the ground that it is without merit. *See Thornblad v. Olson,* 952 F.2d 1037, 1038 (8th Cir.1992).

A person may be sentenced as a career offender if he is 18 years of age or older, is being sentenced for a crime of violence or a controlled substance offense, and has at least two prior felony convictions for a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1. The court of appeals previously held that the defendant's 1987 assault conviction may be deemed a felony for Guidelines purposes, and to the extent he reasserts this argument, the court now makes the same finding.

To the extent the defendant challenges the court's implicit finding that his assault conviction was a "crime of violence," the court also rejects his claim. The defendant conceded at sentencing through his counsel that it was a crime of violence. (Sent.Tr. at 27.)

A prior felony conviction is a "crime of violence" if it "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(1)(i)–(ii). An offense is a "crime of violence" under subsection (i) if the elements of the offense are within the Guideline's definition; an offense is a "crime of violence" under subsection (ii) if the particular facts underlying a defendant's conviction are within the Guideline's definition. *United States v. Wright,* 957 F.2d 520, 522 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 114 (1992).

In Iowa, a person may be convicted of assault with intent to inflict serious injury if he does any act intended to cause injury or physical contact, does any act intended to place another in fear of painful or injurious physical contact, or points a firearm toward another, *see* Iowa Code § 708.1, and the defendant had "intent to inflict a serious injury upon another," *id.* § 708.2. The defendant's conviction for assault with intent to inflict serious injury clearly includes the "use, attempted use, or threatened use of physical force," as required by U.S.S.G. § 4B1.2(1)(i).

The presentence report stated that the state-court complaint charging the defendant alleged that in 1986 he threatened to harm a person while armed with a loaded pistol. The defendant has not challenged the truth of this allegation. The undisputed facts of the defendant's conduct lead to a conclusion that defendant's prior conviction presented "a serious potential risk of physical injury to another," as required by U.S.S.G. § 4B1.2(1)(ii). Under either alternative of § 4B1.2(1), the defendant's prior conviction for assault with intent to inflict serious injury is a "crime of violence." Thus, the defendant was properly sentenced as a career offender.

■■■ 10. In Ground Three, the defendant contends that his guilty plea should be set aside "because it was entered into based on the erroneous assumption by both sides that Defendant [would] be eligible to obtain positive sentencing consideration based on his cooperation" but that, in fact, his cooperation became "irrelevant." The defendant borrows from principles of contract law in arguing that his guilty plea should be set aside because there was a "fundamental misunderstanding." (Mot. at 5.)

11. The allegations contained in Ground Three are very similar to the allegations of Ground One. The defendant's claim that his plea agreement should be set aside because the parties had a "misunderstanding" essentially argues that his plea was not intelligently made. The court has adequately considered the claims contained in Ground Three in its discussion of the allegations contained in Ground One.

Even if the defendant has alleged facts entitling him to relief on the grounds stated, his claim would fail because it lacks a basis in fact. He alleges that he did not receive positive sentencing consideration based on his cooperation. When the court imposed sentence, however, the court stated:

> This court chooses to impose a sentence of 262 months upon the Defendant, the bottom of the identified range. That sentence of 21 years 10 months confinement in my judgment more than adequately meets the needs of the sentencing statute—or meets the needs identified by the sentencing statute, pardon me. *I also make that bottom-range determination in recognition of the fact that the Defendant has given some cooperation to the Government.* I find from what the Government tells me it has been sufficient to take into my judgment in determining a within-the-range determination whereas I did not find it enough to merit a substantial departure from the range.

(Sent.Tr. at 56–57 (emphasis added).) Thus, Ground Three of the motion is without merit.

17. Having carefully reviewed the defendant's claims contained in his § 2255 motion and the prior proceedings, the court concludes that it plainly appears that the movant is not entitled to any relief and that his motion should be dismissed summarily without further hearing.

## ORDER:

Accordingly, It Is Ordered:

Defendant's motion to proceed in forma pauperis is granted.

Defendant's § 2255 motion is dismissed with prejudice.

Done and Ordered.